THE STATE OF KANSAS v. J. W. HENTHORN.

CONSTRUCTIVE CONTEMPT — *Order of Arrest—Error.* It is error to issue an attachment, warrant or order of arrest for an alleged constructive contempt, without an affidavit or information containing a statement of the facts constituting the alleged contempt having first been filed with the court.

*Appeal from Cowley District Court.*

THE material facts are fully stated in the opinion.

*Peckham & Henderson,* for appellant.

*J. N. Ives,* attorney general, and *C. T. Atkinson,* county attorney, for The State.

Opinion by STRANG, C.: This is an appeal from a proceeding for contempt. On the 7th day of January, 1890, there was pending in the district court of Cowley county a certain case, in which Barbara Croco and John Croco were plaintiffs, and the Winfield National Bank was defendant. This case had been tried and a judgment therein had been rendered, but it was pending on a motion for a new trial. There was another case pending in said court at that time, in

which the state of Kansas was plaintiff and C. Perry defendant, said cause being a contempt proceeding instituted by said court against said Perry, charging him with contempt for writing and publishing in the papers of said city a certain card, which it was alleged was calculated to impede and obstruct the business of the court, and to impeach the integrity of said court and the judge thereof. On said 7th day of January, 1890, said card was published in the *Daily Telegram* with comments thereon, as follows:

"ARRESTED FOR CONTEMPT.

"Dr. C. Perry was arrested to-day on a bench-warrant and arraigned on a charge of contempt of court. Dr. Perry's crime (and it must be a crime, else he would not be so charged and arraigned) consists in the following card, published in the daily newspapers:

"'A CARD.

"'In relation to the case of Croco *v.* The Winfield National Bank, I am not a little surprised that the daily papers should so industriously lay before a public ignorant of the facts the allegation of the plaintiff, and at the same time should so entirely ignore the testimony on the part of the defendant. However, this is only in the line of the action of the judge, who evidently believed the allegation of the plaintiff, and gave no credence to the testimony on the part of the defendant, which testimony (so far as the writer's knowledge of the facts of the case) was nevertheless absolutely true. I make only this comment: that if the judge believed what he is reported to have asserted, it is his bounden duty to direct the county attorney to file a criminal action against Messrs. McDonald, E. T. and G. H. Schuler, and myself.     C. PERRY.'

"At this time the result of the case is not known.

"MORAL: Don't express your contempt of a court. Think all you please, but say nothing and saw wood. Probably the court will dismiss the charge. We fail to see wherein any contempt was expressed.

"LATER.—The court gave Dr. Perry until next Monday to make a showing in defense of his rights as an American citizen."

On the next day, January 8, 1890, without any affidavit, complaint or information first having been filed therein, the district court of said county being in session, a warrant was issued by said court, or the judge thereof, for the arrest of the defendant, J. W. Henthorn, together with H. Vincent, and L. Vincent, on a charge of contempt of court; the contempt consisting in the publishing of the card of C. Perry, quoted above,

and comments thereon by the editor of the *Telegram*. The defendant, Henthorn, was arrested and brought before the court. Afterward he filed his answer to the charge contained in the warrant, admitting the publication of the article, and averring that he was the sole editor of the *Daily Telegram.* The answer, which was verified by the oath of the defendant, also averred that the article was not published for the purpose of prejudicing the public against the said court, nor the judge thereof, nor was it published willfully and with intent to influence or in any way to impede or obstruct the administration of justice therein. There was no evidence heard in the matter. The court, however, found the defendant guilty on the admission in the answer, and fined him $100 and costs, and ordered him committed to the county jail until the costs were paid. From such judgment the defendant appeals, and demands his discharge at the hands of this court.

"A contempt of court is either direct or constructive. A direct contempt is an open insult, in the face of the court, to the person of the judges while presiding, or a resistance to its powers in their presence. A constructive contempt is an act done, not in the presence of the court, but at a distance, which tends to belittle, degrade, or to obstruct, interrupt, prevent or embarrass the administration of justice."

When the contempt sought to be punished is committed *in facie curiæ*, the punishment is summary, and generally immediately follows its commission. In such case no preliminary process or evidence is necessary, except what is gathered by the sense of seeing and hearing. The court takes judicial notice of the offense, and punishes without a hearing of any kind, except in some cases to give the guilty parties an opportunity to apologize, upon which the court may discharge, or it may receive the apology in mitigation of the offense in fixing the punishment. But where the contempt is constructive, that is, where the contempt is not committed *in facie curiæ*, but where the act or omission which constitutes the contempt occurs away from the court, beyond its powers of observation, a proceeding in contempt must be instituted to

bring the matter before the court. There were a number of methods whereby such proceedings were commenced under the English practice, several of which obtained more or less countenance in this country under the common-law practice. But at this time, in this country, the common and more approved methods of instituting a proceeding for contempt are, first, when an attachment, or warrant, or order of arrest for contempt issues in the first instance; or, secondly, when a rule to show cause why an attachment for contempt shall not issue, or why the alleged contemnor shall not be punished for contempt. Under either of these methods, the defendant is entitled to a hearing. And a careful examination of the authorities satisfies us that in all cases of constructive contempt, whether the process of arrest issues in the first instance, or a rule to show cause is served, a preliminary affidavit or information must be filed in the court before the process can issue. This is necessary to bring the matter to the attention of the court, since the court cannot take judicial notice of an offense committed out of court and beyond its power of observation.

There are a few cases in the books where the courts have taken notice of constructive contempts, and issued process without any affidavit or information having been filed to bring the subject-matter of the contempt to the attention of the court; but such cases are very rare in this country, and the practice nearly or quite obsolete. The great weight of authority is certainly opposed to such practice. Courts should never be required to go about looking for contempts of their authority. To do so is sufficient to lower their dignity and bring them into contempt.

The case of *Wilson v. Wyoming Territory*, 1 Wyo. 156, is exactly in point with this case. In that case Wilson was arrested on an order of arrest issued by the court without an affidavit or information having been filed therein. He was charged with constructive contempt, for writing and securing the publication in the *Omaha Herald* of an article reflecting upon the first district court of Wyoming, and upon the judge of said court. He answered; no other evidence was intro-

duced, and the accused was found guilty and fined. He appealed to the supreme court of that territory. That court used the following language, in expressing its opinion in the case:

"Without entering upon the question of contempt in this case, . . . we are of the opinion that an error was committed by the district court at the very commencement of the proceedings, which renders it necessary to set aside the judgment thereof. This consisted in issuing the process of attachment without any valid evidence whatever before the court upon which to found such a proceeding."

In *In re Daves*, 81 N. C. 72, the court holds—

"That a rule to show cause why a party should not be attached for contempt in disregarding the order of the court should not be granted on mere motion, but should be based on the affidavit of the party to the attachment, or other satisfactory evidence."

In the case of *Ex parte Wright*, 65 Ind. 508, the court says:

"The grounds of a constructive contempt should be stated by affidavit, by the return of some officer, or in some way made known to the court *prima facie*, by witnesses, or otherwise, so that they may be made a part of the record; and this should be done before a rule or writ is granted against the alleged offender."

In *The State v. Blackwell*, 10 S. C. 35, it is said:

"It is a fatal objection to a rule to show cause why a party should not be attached for contempt, for an offense not committed in the presence of the court, that it was issued without affidavit."

In the case of *Young v. Cannon*, 2 Utah, 561, the court says:

"In all proceedings for contempt which are not committed in the presence of the court, in order to give the court jurisdiction, it is necessary that an affidavit be filed stating the facts constituting the contempt."

"When the alleged contempt is not committed in the presence of the court, an affidavit of the facts constituting the

contempt must be presented, in order to set the power of the court in motion." (*Batchelder v. Moore*, 42 Cal. 412.)

"Proceedings for contempt, not committed in the presence of the court, are instituted by filing an information under oath stating the facts constituting the alleged contempt. An attachment or order to show cause will then be issued, and the party accused brought before the court. As the proceeding is solely to protect public justice from obstruction, the accused is not entitled to a trial by jury." (*Gandy v. The State*, 13 Neb. 445.)

See also *Bond v. Bond*, 69 N. C. 97; *Worland v. The State*, 82 Ind. 50; *McConnell v. The State*, 46 id. 298; *Rugg v. Spencer*, 59 Barb. 397; *The State v. Mott*, 4 Jones (N. C.), 449.

This case must be reversed upon the ground that the court had no jurisdiction of the defendant, because no affidavit or information was filed in the court as a basis for the warrant of arrest upon which the defendant was taken into court and tried.

We therefore recommend that the judgment of the district court be reversed, and the defendant discharged, with costs.

By the Court: It is so ordered.

All the Justices concurring.