THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
COMPTON, APPELLANT.

THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
WHITEHEAD, APPELLANT.

THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
WATERS, APPELLANT.

THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
KUBIC, APPELLANT.

THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
WADE, APPELLANT.

THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
HEADLEY, APPELLANT.

THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
UNITED MINE WORKERS OF AMERICA,
DISTRICT 6, APPELLANT.

THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
UNITED MINE WORKERS OF AMERICA ET AL.,
APPELLANTS.

THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
PACIFICO, APPELLANT.

THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
KOVALESKI, APPELLANT.

THE STATE, EX REL. BRUNS COAL CO., APPELLEE, *v.*
SMITH, APPELLANT.

542

(Nos. 758, 759, 760, 761, 762, 763, 764, 765, 766, 767 and 768—
Decided May 6, 1953.)

*Messrs. Graham, Graham, Hollingsworth & Gottlieb,* for appellees.

*Mr. Glenn Krieder, Mr. Alfred D. Treherne* and *Messrs. Williams, Wendt, Murray & Deeg,* for appellants.

PUTNAM, P. J. These causes, each a separate appeal on questions of law, were consolidated for argument in this court, and this opinion will cover all of them.

The questions involved concern violations of certain orders of the Common Pleas Court of Muskingum County, in which that court issued an injunction against certain picketing and other obstruction tactics of labor organizations in the operation of certain non-union mines producing coal in Muskingum county. The defendants were cited for contempt for a viola-

tion of those orders. They were found guilty and given sentences therefor, and it is from those judgments that these appeals are taken on questions of law.

The following background is necessary to understand the propositions involved herein. On October 1, 1951, the plaintiff, Bruns Coal Company, Inc., filed a petition in equity in the Common Pleas Court, being case No. 38040, seeking an injunction. The defendants in that case were: The United Mine Workers of America, and the officers and members thereof; District No. 6, The United Mine Workers of America and the officers and members thereof; Adolph Pacifico, President of District No. 6, The United Mine Workers of America; George Waters, local organizer for The United Mine Workers of America; Walter Kovaleski, organizer for The United Mine Workers of America; and seven other individuals who do not figure in these appeals. The petition alleges, in substance, that plaintiff was and had been operating a strip coal mine in Muskingum county for four and one-half years; that on September 21, 1951, defendants caused about 200 of their members to enter and trespass upon plaintiff's property and demanded that the mine be closed; and that by threats, intimidation and overt acts, defendants caused the mine to close. Service was had on all defendants personally, except The United Mine Workers of America, which organization was served by registered mail at their office in Washington, D. C. On October 11, 1951, a temporary restraining order was granted. On November 2, 1951, the defendants each entered an appearance in the action by filing an answer to the petition. On May 28, 1952, after full hearing, a permanent injunction was granted, and no appeal from this order was ever prosecuted. Conse-

quently, all questions as to the merits of the permanent injunction, including parties, jurisdiction and the terms thereof are fixed by the law of the case. This permanent injunction is as follows:

"It is further ordered, adjudged and decreed that the defendants, and each of them named and unnamed, and all others associated with them, be and they hereby are permanently enjoined from:

"1. From interfering with the ingress to and egress from any entrance to the mining property or operations of the plaintiff by the plaintiff, its employees or any other person or persons who may have lawful occasion to enter or leave said premises or operations on plaintiff's business or for employment.

"2. From interfering by coercion, intimidation, violence or threats of violence or suggestions of danger to any of the several employees of plaintiff or to any of the persons who might offer themselves for employment at the entrance or at the office or mine operation and places of business of plaintiff, or by molesting such employees in their return from the mining property or operations to and from their mines.

"3. From using abusive, slanderous or threatening language to any employees or persons seeking employment at the mining property, operations or office of plaintiff.

"4. From any unlawful obstructing, delaying or stopping the business of plaintiff.

"5. Unlawfully loitering on or near the mining property, operations, offices, right of way, entrances or territory at or near the mining property, premises or offices of the plaintiff, or from unlawfully picketing said mining property, operations or offices, or from disturbing in any manner the peace, quiet and order of the mining property, operations or place of business

of plaintiff, or the homes and premises of the several employees of the plaintiff, or from loitering, stopping, attempting to stop, or interfering in any way with the employees of the plaintiff to and from their homes to their place of employment for the purpose of intimidating or coercing the employees of plaintiff, or from in any way threatening, intimidating, injuring or attempting to injure or coerce any customers of the plaintiff or employees of plaintiff's customers, who are purchasing coal from plaintiff, and from in any way injuring or threatening to injure any of said plaintiff's customers or their employees who by truck or otherwise are on their way to and from the plaintiff's mining property, operations or offices, for the purpose of purchasing and hauling said coal so sold to plaintiff's customers, or from threatening, intimidating, injuring or attempting to injure or interfere with plaintiff's trucks, or employees of plaintiff in making deliveries to plaintiff's customers.

"6. From suggesting, directing, inciting, abetting or aiding any person or persons in committing any of the acts complained of in this petition or set forth in this restraining order, particularly inducing or inciting large crowds to congregate at or near or upon the mining property, operations or offices of plaintiff.

"7. It is further ordered by the court that the pickets authorized to picket said mining property, operations or offices of the plaintiff, is fixed as follows: Not more than two pickets at any entrance way used by employees going to and from said mining property, operations or offices; said pickets shall at no time congregate in such a manner that there shall be more than one at each side of each entrance and shall stand when picketing individually on separate sides of said entrance; each picket shall remain on the side

of the entrance way that he stations himself on and shall remain on that side until he ceases picketing.''

In the fall of 1952, the plaintiff having reopened its mine, the incidents giving rise to the present litigation occurred. On October 23 there was a violent disturbance in which union organizers and miners again attempted to close down plaintiff's mine. The court, becoming apprised of this fact, on October 25 entered the following order as a journal entry:

''The court, upon public report of the inadequate implementation of its existing orders to safeguard the personal and property rights and interests of plaintiffs and all others connected with the property, business and business operations of any of them, on its own motion and for the sole purpose of making said orders effectual against unlawful intrusions from any source, in order to preserve and maintain the authority of duly constituted government with respect to the aforesaid orders of this court and to exact compliance therewith from all persons whomsoever, hereby directs the sheriff of this county to employ sufficient deputies regular or special, already or hereafter to be commissioned, and to dispose them so as to prevent violation or frustration of any of said orders in any respect and to make arrests whenever warranted; and that a copy of this order be certified by the clerk of this court to the commissioners of this county for the appropriation of sufficient additional money for the payment of their services as herein provided, until further order of the court.''

This order was likewise served upon all defendants in cause No. 38040, personally as to all of them except The United Mine Workers of America, which was served by registered mail at Washington, D. C.

On October 30, 1952, the most violent eruption took

place. Over 200 persons congregated in the municipal park at Crooksville, formed a cavalcade of more than 40 cars and trucks, cruised the entire area, shut down nonunion mines, dumped many trucks hauling coal, stoned others, and forced the shutdown of all nonunion mines in the area. On the same date, plaintiff filed charges of contempt against certain defendants in the original action and others not parties thereto. The charges were heard, the accused were found guilty and sentenced, and these appeals result.

The appeals fall into several classes with some mutual and separate questions involved. The original affidavit in contempt was filed on November 1, 1952, against (a) The United Mine Workers of America and the officers and members thereof; (b) District No. 6, The United Mine Workers of America and the officers and members thereof; (c) Adolph Pacifico, President of District No. 6, The United Mine Workers of America; (d) Adolph Pacifico, individually and as a member of The United Mine Workers of America; (e) Walter Koveleski, individually and as a member of The United Mine Workers of America; (f) Delvin Smith, individually and as a member of The United Mine Workers of America; (g) George Headley, individually and as a member of The United Mine Workers of America; and (h) Clem Wade, individually and as a member of The United Mine Workers of America. Later, on November 8, 1952, upon application (i) George Waters, (j) James Compton, and (k) Chris Whitehead, all as individuals and members of The United Mine Workers of America were made parties to the contempt action of November 1 and were personally served with citations. Of these, a, b, c, e, i, were defendants in the original action. The others, d, f, g, h, j, and k, were not parties to that action.

This affidavit charged that such persons violated the permanent injunction order of the court on or about October 23, 1952, and alleged further that the alleged contemnors have continued to congregate in and about the area of the plaintiff's mine, so as to intimidate the employees of the plaintiff and thereby force the closing down of the plaintiff's mine.

One of the grounds of error assigned by various defendants, appellants herein, is that the court erred in admitting evidence under this affidavit as to the occurrences of October 30. We hold that the affidavit of November 1 is sufficiently broad and detailed to cover any occurrences on October 23 and, also, the occurrences of October 30. There was no error in the court admitting this evidence. The hearing on the affidavit was not held until November 12 and 13, 1952. All parties were served with a copy of the charge prior thereto and, consequently, were fully apprised of the nature of the hearing. None of them demanded a further bill of particulars.

While we will discuss the errors assigned by the defendant Kubic later, one of his assignments of error should be mentioned here. He seasonably demanded a jury trial. It does not appear that all the other defendants did so. However, we find no authority in law granting to one charged with contempt, civil, criminal, or quasi criminal, the constitutional right to a jury trial. We consequently hold that none of the alleged contemnors were entitled thereto, and that due process of law was not denied them by a denial thereof.

Another ground of error assigned by all those cited for contempt who were not parties to the original injunction action is that as a matter of law they cannot be convicted of contempt for a violation of the injunction order unless they had actual knowledge of such

order. We agree with the proposition of law that knowledge is necessary, but subject to the qualification that one who aids or abets those with actual knowledge is chargeable with that knowledge. The question in this review is: Was such knowledge proven by the requisite degree of proof? We hold that that degree is clear and convincing evidence.

We have read and studied the record, especially with that proposition in mind, and we cannot say that the determination of the trial court that all the nonparty contemnors did have actual knowledge of the injunction and the pertinent terms thereof is against the manifest weight of the evidence. It is true that much, but not all, of the evidence on that question is circumstantial. However, in many cases, including this one, circumstantial evidence is the most potent and convincing that can be produced. This injunction, temporary and permanent, had been in force for nearly a year. Especially since May 28, 1952, when a copy of the permanent injunction had been served upon all parties to the original action which included officers and organizers of District No. 6, The United Mine Workers of America, which district embraced all the disputed territory and much more. The testimony shows that the question of the operation of nonunion mines in the district was a subject of general conversation and condemnation among union miners in that part of the country. The case had been given wide publicity by the newspapers in southeastern Ohio. The evidence shows that a day or so before October 30, word was passed around among the union miners that there would be a meeting at city park in Crooksville on October 30. This was after the court had made its order of October 25, which had also been served upon the parties to the action. The deputies appointed by

virtue of that order were officers of the court and were cruising the district. Consequently, it may well be said that violations of the injunction in the presence of these deputies was in the presence of the court, and that they would have been justified in making arrests for a violation thereof on the spot. On the morning of October 30, more than 200 persons congregated in said city park with the officials and organizers of district No. 6. They formed a cavalcade of more than 30 cars and trucks and went about the district with the avowed and stated purpose of closing down all non-union mines in the vicinity. This they did, in violation of the permanent injunction. The events of October 23, although less extensive, showed a similar organizational plan.

On the question of knowledge, and on the question of the duty which this permanent injunction imposed upon the defendants, officials and organizers of district No. 6 and of The United Mine Workers of America, it is the claim of the defendants that this injunction was entirely passive and contained no mandatory features and, consequently, that they were under no duty to inform their members of the same or the terms thereof. With this contention we do not agree. We hold that this injunction order, by its terms, imposed a duty on these defendant officials to see that their members knew of the order and the terms thereof. We believe that they did, because at first pickets were posted as allowed by the injunction and it was otherwise complied with. One would have to be naive to hold that the circumstances as shown to have existed in this case failed to show actual knowledge. If any other argument is needed, section No. 6 of the injunction is directed to aiding or abetting any person in committing any of the interdicted acts. We cannot

perceive that either the officials or actual demonstrators were not aiders and abettors.

The United Mine Workers of America is one of the most powerful and potent unions in this country. It is tightly organized from top to bottom. We know from recent history that a directive or even a suggestion from national or district headquarters is obeyed as a matter of policy. The union has demanded and has been accorded the right to organize and the right to bargain on an industry-wide basis. Certainly these rights and privileges carry with them a corresponding duty and obligation to maintain lawful and contractual discipline among its members as far as industrial disputes are concerned. Were it otherwise it would be impossible to maintain orderly government because of the ease with which other members from other localities and states could violate any order of any court by the simple expedient of claiming lack of knowledge.

It is further contended that the court erred in the admission of evidence. Much of the evidence was tenatively received and, in a case such as this, it is presumed that the incompetent evidence was disregarded.

We come now to the case of the defendant Steve Kubic. His assignments of error not already specifically passed upon consist of the contentions that he was placed twice in jeopardy and that the issues in the actions in which he was convicted and sentenced were, as to him, *res judicata*, and, in addition, that there is no evidence in the record as to his participation in the events of October 23. Kubic was not a party to the original injunction action. However, on November 1, 1952, an affidavit was filed charging that on or about October 23, 1952, and on October 31, 1952, he committed certain acts in violation of the injunc-

tion. A citation was issued commanding him to appear on November 7 to answer thereto. Service having failed, he was arrested, and appeared on November 7 in response to a bail bond. A hearing was had on November 7 and it developed at the hearing that the offenses alleged to have occurred on October 31 had actually taken place on October 30. However, testimony was adduced concerning events of both October 23 and October 30. No judgment was rendered by the court, and the cause was continued. On the same date, November 7, presumably as a result of the testimony taken on that date, another affidavit was filed charging Kubic with violations of the injunction on October 23 and October 30. His case was again set for hearing and was heard with all the other contempt cases on November 12 and 13 when further testimony was introduced as to the occurrences on both October 23 and October 30. The court rendered its judgment on November 15 and held that there was no evidence sustaining charges against Kubic for activities on October 31, but held him guilty of contempt for his activities on October 23 and October 30. We find no elements of either double jeopardy or *res judicata* in such procedure. No judgment whatever was rendered on the hearing of November 7 until the final judgment was entered on November 15 and that judgment embraced both hearings. However, a detailed examination of the record fails to show any evidence that Kubic, who was not a party to the original action, had any part in the occurrences of October 23. His conviction and sentence therefor consequently must be and is reversed. There is ample evidence to show that he was a ring leader in the riotous activities and injunction violation of October 30. He was justly convicted therefor.

We will now address our attention to the contention of The United Mine Workers of America, in which it claims that the court erred in not dismissing it from the contempt proceedings because it did not have proper notice and service of process thereon. This union admits in its brief filed in this court that through inadvertance or otherwise it had made its appearance in the original injunction action and was properly before the court when the permanent injunction was issued on May 28, 1952, and that that determination stands unreversed. However, it is now its contention that it was not properly before the court in the contempt proceedings because no proper service was made upon it, although the citation in contempt and the entry of the court on October 25 was served upon it by registered mail in Washington, D. C. Authorities are cited from jurisdictions other than Ohio to the effect that a criminal contempt proceeding is a separate proceeding and service must be made as in the original action. However, this is not the Ohio law.

In the case of *Ray* v. *Broadway & Newburg Street Ry. Co.,* 10 C. C. (N. S.), 577, 12 C. D., 793, affirmed without opinion, 57 Ohio St., 664, 50 N. E., 1133, the first paragraph of the syllabus is as follows:

"Where there has been a violation of an order of injunction, it is not necessary to docket an independent action in contempt, or proceed in an independent prosecution, to enforce the order made in the civil action. The court continues to have control to enforce the order under the authority of Section 5881, Revised Statutes." (See Section 11887, General Code.)

See, also, *Beach, Jr.,* v. *Beach,* 79 Ohio App., 397, 74 N. E. (2d), 130, where the *Ray case* is quoted with approval. We have found no decision of the Ohio Supreme Court to the contrary. We likewise hold this to

be the law. Consequently, it follows that the motion to dismiss was not well taken, and that the court did not err in so holding.

Another error assigned by the various defendants is that the court erred in assessing costs in addition to imposing the fines and jail sentences. No cases in precise point are cited, and we have found none, although we believe that the cases of *Pilliod* v. *Searles,* 115 Ohio St., 694, 155 N. E., 231, and *Sawbrook Steel Casting Co.* v. *United Steel Workers of America,* 148 Ohio St., 73, 73 N. E. (2d), 373, determine the question. These cases seem to hold that Sections 11887 and 11888, General Code, are cumulative with Section 12137 *et seq.,* General Code. The former sections provide for the payment of costs. The latter sections do not. The fines in the instant case were assessed and were the maximum allowable under Section 12137 *et seq.,* General Code.

In the *Sawbrook Steel Castings Company case, supra,* the court quoted with approval the following language from the *Searles case*:

" 'Sections 11887 and 11888, prescribing the penalty for disobeying an order of injunction, are not exclusive, but are cumulative with Sections 12137, 12142 and 12147, General Code, relating to contempt and the punishment therefor.' "

If we properly understand the meaning of the word, ''cumulative,'' and the above pronouncement of the law, costs may properly be assessed in addition to the maximum penalty provided in Section 12137 *et seq.,* General Code. We find no error in this regard.

The next questions regarding the various sentences and alleged as error are (a) that the court attached improper conditions by which the jail sentences might be suspended, and (b) that the court was in error in

ordering that the defendants, in addition to the jail sentences, be committed to jail until the fines and costs were paid or secured to be paid or they were otherwise legally discharged. As to contention (a), we find no error. The court could suspend or withhold suspension as it saw fit. If the conditions attached to suspension were unacceptable or impractical of fulfillment it simply meant that the jail sentences stood. As to contention (b), we find that the court was in error. It had no power to commit these parties to jail for the additional period beyond the 10 days. The sentences of such parties are consequently reversed as to that feature, and the causes are remanded for re-sentence.

We now come to the appeal of Adolph Pacifico. He is an original defendant in this action as President of District No. 6, The United Mine Workers of America. He is not a party to the original action as an individual. He is a party to the contempt proceedings, having been named in the affidavit of October 31, as an individual and as a member of The United Mine Workers of America. He was not found guilty or sentenced as an individual or as a member of The United Mine Workers of America. He was found guilty and sentenced as President of District No. 6, The United Mine Workers of America. There is no evidence that he as an individual was present or participated in any of the activities resulting in the contempt proceedings. If his conviction is justified it must be justified on the grounds that he, as president of district No. 6, and a member of the policy board of that district was negligent in his duties and, by a failure to issue proper directives for the guidance of the union miners in the light of the injunction, was guilty of aiding and abetting their activities. We can see no

difference in his position than in the position of The United Mine Workers of America and District No. 6, The United Mine Workers of America. If one is guilty, they are all guilty, and if one is not guilty, none of the three is guilty. All three were given fines for the violations of October 23 and October 30, but Pacifico, in addition, was given jail sentences for both dates. For the reasons above set forth, we hold that his conviction was not erroneous. He was, however, also sentenced in addition to his jail sentence to stand committed to jail until his fine and costs were paid or he was otherwise legally discharged. This part of his sentence as above stated was erroneous and his cause is remanded for resentence in accordance with this opinion. •

The defendants, Smith, Headley, Wade, Compton, and Whitehead, were convicted and fined only for their activities on October 23. There is abundant evidence to sustain those convictions, but, as above stated, they must be resentenced because of the reason hereinbefore stated with reference to being committed to jail until the costs were paid.

On this proposition of committing to jail until costs are paid in addition to the maximum jail sentence of ten days, this court has announced its position that the practice is erroneous in the case of *Bloomberg* v. *Roach, Recr.*, 43 Ohio App., 178, 182 N. E., 891, paragraph five of the syllabus.

See, also, the cases of *Miller* v. *Toledo Grain & Milling Co.*, 21 C. C., 325, 11 C. D., 629; *Lubbering* v. *State,* 19 C. C., 658, 10 C. D., 508.

As above stated, Kubic's conviction for his activities on October 23 is reversed, and he is ordered discharged on that count. His conviction for his activities on October 30 is affirmed, but that portion of his

sentence which orders him to stand committed to jail until the fine and costs are paid is held erroneous, and it is ordered that he be resentenced.

That part of the sentence of Adolph Pacifico which orders him to stand committed to jail until fine and costs are paid is likewise erroneous and the same is remanded for resentence.

We find no error in the finding of guilty against either Koveleski or Waters. They were both parties to the original action and were served personally with all the orders in the case. They were officials of district No. 6, both being organizers for their division of that district. They were both present and participated in the activities of October 30. There is no evidence that Koveleski was present personally on October 23. There is evidence that Waters was on picket duty that day at the Ten-X mine. But being parties to the action and organizers they were guilty as aiders and abettors. However, that part of their sentences to stand committed to jail until fines and costs were paid in addition to their 10-day jail sentences is erroneous and their causes are remanded for resentence. A journal entry may be prepared in accordance with this opinion in all these cases, submitted to opposing counsel for approval, and then to this court.

*Judgment accordingly.*

McClintock and Montgomery, JJ., concur.