Tami L. BROCK  *v.*  Bobby W. EUBANKS

CA 07-560                                      288 S.W.3d 272

Court of Appeals of Arkansas
Substituted opinion on grant of rehearing October 1, 2008*

---

* REPORTER'S NOTE: Original opinion delivered April 23, 2008.

*James F. Lane, P.A.*, by: *James F. Lane*, for appellant.

*David T. Howell*, for appellee.

SAM BIRD, Judge. On April 23, 2008, this court handed down a published opinion affirming two orders of the circuit court against Tami Brock, a custodial parent: an order holding her in contempt of court for failure to abide by the court's previously entered child-visitation schedule, and a permanent restraining order that enjoined her from interfering with Bobby Eubanks's visitation with their minor child. Brock has now filed a petition for rehearing. We grant the petition and issue this substituted opinion.

Brock raises the following points: (1) whether any evidence supports the circuit court's contempt order and the permanent restraining order; (2) whether the circuit court erred in ruling on a motion-for-contempt citation filed only three days before a hearing previously scheduled on other matters; and (3) whether the permanent restraining order improperly delegated judicial authority to law-enforcement officers, who are part of the executive branch of government, by giving them discretion to arrest and incarcerate Brock should they "determine or reasonably suspect" her willful violation of any court orders in this case, whenever issued. We affirm the circuit court's finding of contempt; we reverse the portion of the permanent restraining order that impermissibly delegates the court's contempt power to law-enforcement officers.

*Whether any evidence supports the circuit court's contempt order and the permanent restraining order*

█ Eubanks filed motions for contempt against Brock on February 7 and February 20, 2007, alleging that she had interfered with his visitation with their child. In separate responses to each motion, Brock denied willful contempt of any order of the court. On appeal she argues that, in the absence of competent and "live" testimony to support Eubanks's claims of contempt, the affidavits attached to his motions were not competent evidence in support of contempt. Arkansas Rule of Civil Procedure 43(c), however, which deals with evidence on motions, expressly permits the trial judge to hear the matter on affidavits presented by the respective parties. Here, where Brock was aware of the contempt hearing but did not appear, the trial court was well within its discretion in hearing the matter on the affidavits alone.

*Whether the circuit court erred in ruling, at a hearing previously scheduled on other matters, on a motion for contempt citation filed three days before the hearing*

On February 14, 2007, the circuit court ordered Brock to appear at a February 23 hearing on Eubanks's first motion for contempt, which he had filed on February 7, to show cause why she should not be cited for contempt of previous orders of the

court. In his February 20 motion Eubanks alleged that Brock had committed contemptuous acts on February 16; on February 20 the court again ordered her to attend the February 23 hearing to show cause why she should not be cited for contempt of previous orders of the court. Brock filed her response to the February 7 motion on February 14 and filed her response to the February 20 motion on February 27. She contends on appeal that the court erred in considering the allegations of the February 20 motion at the February 23 hearing because she was not given the ten days that Ark. R. Civ. P. 6 allows for responding.

■■ The statute dealing specifically with contempt, Ark. Code Ann. § 16-10-108 (Supp. 2007), sets no fixed time for a party's response to a charge of contempt, providing in subsection (c) only that the party charged must be notified and given a "reasonable time" to make a defense. Here, the circuit court had before it adequate evidence to support the finding of contempt even without considering instances that occurred after the first show-cause order was issued, especially in light of Brock's failure to appear as ordered after her motion for a continuance was denied. Nevertheless, we think that those subsequent acts were properly considered: Brock was given adequate notice that she stood accused of ongoing violations of the visitation order, and the affidavits attest to a pattern of ongoing conduct demonstrating a disregard of the court's orders. The court did not violate her due process rights by taking notice of the instances of contempt alleged in the February 20 motion, which constituted part of the ongoing contempt alleged in the show-cause order.

*Whether the permanent restraining order improperly delegated judicial authority to law-enforcement officers by giving them discretion to arrest and incarcerate Brock should they "determine or reasonably suspect" her willful violation of any court orders in this case, whenever issued*

Brock contends that only a court can make a contempt finding, and that, under the Separation of Powers doctrine of the Arkansas Constitution, the executive branch of government (which includes law enforcement) cannot exercise the contempt powers vested solely in the judicial branch. She argues that the circuit court attempted to make the executive branch the judge

and jailer by delegating to law-enforcement officers the authority to "determine" if she was in contempt of any order of the court and to "arrest and incarcerate" her upon a determination or reasonable suspicion of violation of the court's orders. We agree with her arguments.

The circuit court found in its permanent restraining order that Brock had committed multiple, contemptuous violations of previous orders. The court found that the issuance of the permanent restraining order was necessary "for the purpose of coercing . . . Brock's compliance" with the agreed visitation order entered by the court, the standing order on visitation, and an order of contempt issued a week earlier. The court also found it necessary and appropriate "to use law enforcement" to coerce Brock's compliance with "all" the court's orders should she at any future time fail to fully comply with those orders or any other orders subsequently issued in the case. Finally, the court found that the use of law enforcement, if necessary to enforce the court's orders, should extend to the transport of the minor child to her father's home and also extend to Brock's arrest and incarceration "if law enforcement determines or has reasonable suspicion that Tami L. Brock has willfully violated" previous or future orders of the court pertaining to this case.

The following passage of the permanent restraining order sets forth this latter finding:

> [T]he use of law enforcement, if necessary to enforce the Court's Orders, should extend . . . to the arrest and incarceration of Tami L. Brock if law enforcement determines or has reasonable suspicion that Tami L. Brock has willfully violated the Agreed Visitation Order entered January 6, 2007, this Court's Standing Order on Custody, Visitation and Support, and/or this Court's Order of Contempt issued on 23 day of February, 2007, or any other Order subsequently issued by the Court pertaining to this case, including this Permanent Restraining Order.

Brock characterizes this order as the unconstitutional delegation of judicial authority to the executive branch.

The General Assembly is given power by our state constitution to regulate by law punishment for contempt "not commit-

ted in the presence or hearing of the courts, or in disobedience of process." Ark. Const. art. 7, § 26, *Indirect contempt*. The constitutional authority delegated to the legislature to regulate punishment for contempt is in addition to, and not in derogation of, the inherent power of the court to punish contempt in disobedience of their process. *Smith v. Smith*, 28 Ark. App. 56, 770 S.W.2d 205 (1989).

The legislature has enacted Ark. Code Ann. § 16-10-108, which states:

> (a) Every court of record shall have power to punish, as for criminal contempt, persons guilty of the following acts and no others:
>
> (1) Disorderly, contemptuous, or insolent behavior committed during the court's sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority;
>
> (2) Any breach of the peace, noise, or disturbance directly tending to interrupt its proceedings; [and]
>
> (3) Willful disobedience of any process or order lawfully issued or made by it[.]
>
> . . . .
>
> (c) Contempts committed in the immediate view and presence of the court may be punished summarily. In other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his or her defense.

Ark. Code Ann. § 16-10-108 (Supp. 2007). Under this statute, only contempts committed in the immediate view and presence of the trial court may be summarily punished. *Harvell v. Harvell*, 36 Ark. App. 24, 820 S.W.2d 463 (1991). As to the mode of procedure in cases of contempt not committed in the immediate view or presence of the court, the contempt must be brought before the court by affidavit of the persons who witnessed it, or who have knowledge of it. *Ex parte York*, 89 Ark. 72, 115 S.W. 948 (1909).

The *York* court quashed judgments punishing the appellants because the chancery court had proceeded without any affidavit or its equivalent as a foundation for the contempt proceedings. The basis of the supreme court's decision was as follows:

> In *State v. Henthorn*, the court truly said: "And a careful examination of the authorities satisfies us that in all cases of constructive contempt whether the process of arrest issues in the first instance or a rule to show cause is served, a preliminary affidavit or information must be filed in the court before the process can issue. This is necessary to bring the matter to the attention of the court, since the court cannot take judicial notice of an offense committed out of court, and beyond its power of observation. There are a few cases in the books where the courts have taken notice of constructive contempts and issued process, without any affidavit or information having been filed to bring the subjectmatter [sic] of the contempt to the attention of the court. But such cases are very rare in this country, and the practice is nearly or quite obsolete. The great weight of authority is certainly opposed to such practice."
>
> In harmony with the foregoing authorities, section 3989 of *Kirby's Digest* provides: "Disobedience of an injunction may be punished by the court, or by the judge thereof, or any circuit judge in vacation, as a contempt. An attachment may be issued by the court or judge upon the production of evidence by affidavit of the breach of the injunction against the party committing the same."

89 Ark. at 72, 115 S.W. at 949 (citations omitted). *Henderson v. Dudley*, 264 Ark. 697, 574 S.W.2d 658 (1978), reiterated the holding of *York*:

> [I]n all cases of constructive contempt, *i.e.*, contempt not committed in the immediate view or presence of the court, since the court cannot take judicial notice of an offense committed outside its presence, it is necessary that the matter be brought to the attention of the court by a preliminary affidavit or information before an order to show cause or other process could be served.

*Id.* at 702, 574 S.W.2d at 661-62.

In *Davis v. Merritt*, 252 Ark. 659, 480 S.W.2d 924 (1972), our supreme court ruled that the chancery court exceeded its jurisdiction by appointing a committee of three lawyers to conduct an investigation and report to the chancery court whether or not in their opinion, based on their investigation, parts of an abstract filed by other lawyers in an appeal constituted contempt of court or violation of the Code of Professional Ethics. The *Davis* court held that no constitutional, statutory, or case law justified the entry of the chancellor's order. *See also Ex parte Coulter*, 160 Ark. 550, 255 S.W. 15 (1923) (quashing an order for the appellant to be taken into custody and confined in jail until he made past due child-support payments because the appellee's attorneys had no authority to require the appellant to appear in court to answer their charge that he was in contempt and because the attorney's "notice to appear," although served on appellant, had not been given by the trial court).

Disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute contempt, and punishment for such contempt is an inherent power of the court. *Hilton Hilltop, Inc. v. Riviere*, 268 Ark. 532, 597 S.W.2d 596 (1980). Unless the court initiates the proceedings on its own motion, however, any proceeding to punish for contempt committed outside the presence of the court must be initiated by an affidavit of a person who witnessed the contempt or otherwise has knowledge of it. *Id.*; *see also Nelson v. Nelson*, 20 Ark. App. 85, 723 S.W.2d 849 (1987); *Henderson v. Dudley, supra*; *Ex Parte Coulter*, 160 Ark. 550, 255 S.W. 15 (1923); *Lee v. State*, 102 Ark. 122, 143 S.W. 909 (1912); *York v. State*, 89 Ark. 72, 115 S.W. 948 (1909).

The permanent restraining order in the present case authorized law-enforcement officers to arrest and incarcerate Brock for actions far beyond the statutory offense of interference with visitation.[1] The order impermissibly vested officers with the discretion to arrest and incarcerate Brock should they "determine or reasonably suspect" that by acts committed outside the presence of the court she had violated any of seven duties besides custody

---

[1] Interference with visitation occurs if a person, "knowing that he or she has no lawful right to do so, ... takes, entices, or keeps any minor from any person entitled by a court decree or order to the right of visitation with the minor." Ark. Code Ann. § 5-26-501 (Supp. 2007).

exchange,[2] as well as any current or future order related to the case. Nor was Brock provided a means of purging herself of contempt should officers decide to incarcerate her. Clearly, the order was an impermissible delegation of the circuit court's judicial power to enforce its orders by finding a party in contempt and assigning punishment for the contempt, an inherent power of the court.

This impermissible delegation of judicial powers cannot be overcome simply by depicting persons upon whom the power is conferred as "officers of the court." It is one thing for a court to order law-enforcement officers to arrest and bring before the court a person who the court has determined has committed a violation of its order. It is quite another thing for a court to authorize law-enforcement officers to decide whether a person has willfully violated a court order and to arrest that person upon the officers's reasonable suspicion that a willful violation of its order has occurred. The former is clearly nothing more than the court's use of its strong arm to carry out the court's function of compelling certain action or conduct by parties to litigation pending before it. The latter is nothing less than the court's assigning to law enforcement the judicial function of deciding whether conduct constitutes a violation of the court's order and whether such conduct is willful and, therefore, contemptuous.

The order under consideration here does not require law enforcement, after arresting Brock, to bring her before the court or even inform the court that the arrest has been accomplished. This concern is not overcome, as suggested by the dissent, merely because the order is silent on this point. It cannot be assumed that the provision of Ark. Code Ann. § 12-11-104,[3] cited by the dissent, would extend to officers who determine that a person is in violation of visitation orders. Nor is the court's order here entitled to the "presumption of regularity" attaching to judgments, to which the dissent refers. The order clearly and unambiguously delegates the judiciary's contempt power to law-enforcement

---

[2] For example, the order required Brock to promptly return missed phone calls from Eubanks, and to have the child's bags packed and ready before time for pick up.

[3] Under this statute, officers authorized to execute process, who find or have reason to believe that resistance will be made to the execution of the process, shall report to the court from which process is issued the names of the resisters so that they may be punished for contempt. Ark. Code Ann. § 12-11-104 (Supp. 2007).

officers, rendering the order, quite simply, one that is *not* regular on its face. Finally, as for a court of equity's historic ability to mold remedies suitable to the evil, *Cox v. Cox*, 17 Ark. App. 93, 95, 704 S.W.2d 171, 173 (1986), does not hold that a court can delegate its contempt powers to law enforcement.

There is no question that law-enforcement officers are members of the executive branch under our system of government. While they may occasionally function simultaneously as officers of the court (i.e., as court bailiffs), they are not officers of the court when in the performance of their law-enforcement functions. Even a law-enforcement officer who executes a search or arrest warrant or serves civil process or orders issued by a court is performing those functions as a part of the executive branch, not as a judicial officer. The 1953 Ohio intermediate appellate court decision relied upon by the dissent is a dubious anomaly, unsupported by authority in Arkansas or any other state. The dissent incorrectly suggests that law-enforcement officers who are performing their law-enforcement function of serving a court order are somehow anointed as judicial officers with authority to make decisions traditionally and constitutionally assigned to the courts.

■ In summary, the permanent restraining order delegated to law-enforcement officers the power to determine whether Brock was in contempt, it made no provision for bringing her before the court after her arrest and incarceration, and it failed to assign anyone that responsibility. The order did not address how or when her incarceration could be ended, and she was deprived of the opportunity to testify and raise affirmative defenses to contempt that are allowed by Ark. Code Ann. § 5-26-501. We therefore reverse the portion of the order that grants law-enforcement officers the discretion to arrest and incarcerate Brock if they determine or have reasonable suspicion that she has willfully violated orders of the court.

Affirmed in part; reversed in part.

GLADWIN, GRIFFEN, GLOVER, and VAUGHT, JJ., agree.

PITTMAN, C.J., dissents.

JOHN MAUZY PITTMAN, Chief Judge, dissenting. This case involves multiple instances of contempt of court by refusal to permit appellee's court-ordered visitation, including instances that took place *after* the show cause order had issued. No one can contest

that appellant's behavior shows a clear pattern demonstrating complete disregard of the trial court's orders. Nor can it be contested that appellant's contumacious actions are harmful to her child. Nevertheless, the majority holds that an Arkansas court of equity lacks the authority to permit police officers directly charged with enforcement of its restraining order to make arrests for violations of the order committed in their presence. I respectfully dissent.

Based upon the trial court's finding of chronic and unrelenting refusal to comply with the visitation order, the permanent restraining order authorized police officers to pick up the child and deliver her to appellee for visitation. It also authorized those police officers to arrest appellant should she again willfully violate the restraining order. Appellant argues that this authorization to arrest is outside the scope of the trial court's authority because it violates separation of powers by vesting in officers of the executive branch the judicial power to find and punish for contempt.

Appellant's argument that the order appealed from runs afoul of the separation-of-powers doctrine is specious at best. First, appellant's argument fails because it is based on a false premise. The restraining order does not permit police officers to make a finding of contempt and imprison appellant as punishment therefor, but instead merely permits them to arrest appellant upon reasonable belief that she has violated the restraining order. Nothing in the order implies that appellant would not then be brought before the court as required by law. *See, e.g.*, Ark. Code Ann. § 12-11-104(a) and (b) (Supp. 2007). Authority to arrest in such circumstances is no more an imposition of punishment than is any other arrest based on reasonable cause. It is simply execution of an order of body attachment. Whether or not the appellant would be found in contempt, and whether any contempt found would be coercive or punitive, is simply not addressed in the order. To simply assume, as the majority does, that the order in fact authorized an illegality is to disregard the presumption of regularity that attaches to judgments rendered by courts of general jurisdiction. *See Davis v. Schimmel*, 252 Ark. 1201, 482 S.W.2d 785 (1972); *Bramucci v. State*, 76 Ark. App. 8, 62 S.W.3d 10 (2001). Instead of applying this strong presumption of correctness to the trial court's order, the majority, for reasons that are not entirely clear, turns the law on its head by presuming that an order regular on its face is not in accordance with the law. *See Grimes v. Jones*, 193 Ark. 858, 103 S.W.2d 359 (1937).

The underlying question is whether the trial court has authority to "pre-authorize" arrest for contempt.[1] Arkansas has a statute governing contempt, Ark. Code Ann. § 16-10-108 (Supp. 2007), but the Arkansas Supreme Court has made it very plain that the power to punish for contempt is inherent in the courts under the Arkansas Constitution and that the legislature may neither enlarge nor diminish it. *See, e.g., Ivy v. Keith,* 351 Ark. 269, 92 S.W.3d 671 (2002); *Osborne v. Power,* 322 Ark. 229, 908 S.W.2d 340 (1995). The law relating to contempt is thus based in the common law, and is limited only by the federal and state constitutions. T. CRABTREE, *Contempt Law in Arkansas,* 51 ARK. LAW REV. 1 (1998). There is common-law authority for the proposition that police officers may, under certain circumstances, make arrests for contempt of court when they are acting in the capacity of

---

[1] The majority holds that the trial court's order violated the separation-of-powers doctrine. Article 4, section 1 of the Arkansas Constitution divides the governmental power of the State of Arkansas into legislative, executive, and judicial departments, and article 4, section 2 provides that no person or collection of persons, being one of these departments, shall exercise any power belonging to either of the others except as expressly permitted. In this context, it has been held that, although the legislature may not delegate its legislative authority, it may, by providing guidelines, delegate to officials belonging to another branch of government the power to determine certain facts, or the occurrence of a certain contingency, upon which the operation of a statute is by its terms made to depend. *Venhaus v. State ex rel. Lofton,* 285 Ark. 23, 684 S.W.2d 252 (1985). Here, the trial court's order directed police officers to arrest appellee if they determined that appellee was in violation of the court's visitation order. To my mind, the analogy is perfect: nothing in the trial court's order permitted executive-branch police officers charged with its execution to impose punishment for contempt, but instead the order simply and expressly permitted them to arrest appellee if they determined that the fact or contingency of a violation of the visitation order occurred in their presence. Thus the Arkansas Constitution does not forbid.

In our earlier opinion in this case, from which this rehearing arose, we stated in dicta that there had been no constitutional violation. It is important to note that this was dicta: our holding that no error was committed in directing police officers to arrest appellee for violation of the order was based not on the Arkansas Constitution but instead on an Arkansas statute that made interference with visitation a criminal offense. Today's holding, however, rests squarely upon the majority's interpretation or construction of the Arkansas Constitution. I find it ironic that the majority's erroneous decision that the trial court exceeded its constitutional authority is itself a clear and gross violation of the constitution; that is, Amendment 80, section 5 of the Arkansas Constitution vests in the Arkansas Supreme Court exclusive authority to determine the jurisdiction of the Arkansas Court of Appeals, and the supreme court has exercised that authority by reserving unto itself the exclusive jurisdiction to either interpret or construe the Arkansas Constitution. Ark. Sup. Ct. R. 1-2(a)(1).

officers of the court charged with enforcing the court's orders. In *State v. Compton*, 96 Ohio App. 541, 123 N.E.2d 43 (1953), the trial court found that its previous orders in a labor dispute had been inadequately implemented and therefore directed the sheriff to assign deputies to prevent violations of the court's order and to make arrests whenever warranted. The appellate court approved that order in the following language:

> The deputies appointed by virtue of that order were officers of the court and were cruising the district. Consequently, it may well be said that violations of the injunction in the presence of these deputies was in the presence of the court, and that they would have been justified in making arrests for a violation thereof on the spot.

*State v. Compton*, 96 Ohio App. at 550-51, 123 N.E.2d at 48.

In the present case, the trial court directed police officers to assist in the implementation of its order by transporting the child; as such, they were officers of the court for that purpose and were, pursuant to *Compton,* authorized to make arrests for violation of the order. *See* Ark. Code Ann. § 16-81-106(e) (Repl. 2005) (arrest authorized when ordered by magistrate or judge for offense committed in presence of the court); *Lockett v.* State, 145 Ark. 415, 224 S.W. 952 (1920) (refusal to answer a question posed by the grand jury punishable as a contempt committed in the presence of the court because "[t]he grand jury system is a part of the machinery of the court. Under our system of procedure, the court could not function without this strong arm. In the hearing and presence of the court necessarily relates to its constituent, functioning parts"); *see generally* 17 C.J.S. CONTEMPT § 76 (1999).

It is difficult to understand how the majority arrived at its conclusion that the trial court's order violated the separation-of-powers doctrine. It is more difficult still to understand how appellant could possibly have been prejudiced by the asserted error. The officers in this case were charged pursuant to the restraining order with enforcement of the visitation order, by arrest if necessary. Keeping or enticing a minor from a person entitled by court order to visitation with the minor is criminally proscribed as Interference with Child Visitation, a Class C misdemeanor, pursuant to Ark. Code Ann. § 5-26-501 (Repl. 2006). Because the police officers were charged with enforcement and facilitation of visitation pursuant to the restraining order, they would necessarily be present at the time that this offense was

committed, and police officers are authorized by law to make arrests for misdemeanors committed in their presence. Ark. R. Crim. P. 4(a)(iii); Ark. Code Ann. § 16-81-106(c)(1) (Repl. 2005). Therefore, the restraining order did not authorize police officers to do anything that they were not already authorized to do pursuant to rule and statute, and appellant suffered no prejudice.

Today's holding strips Arkansas courts of equity of their historic ability to mold a remedy suitable to the evil to be addressed. *See Cox v. Cox*, 17 Ark. App. 93, 704 S.W.2d 171 (1986). This is particularly lamentable in this case. Without the ability to authorize the immediate arrest of a parent for violation of a restraining order based on intransigent and continuous refusal to allow court-ordered child visitation, the trial court is left with no alternative other than ignoring the violation, or instead ordering punitive imprisonment of the offending parent, a measure that generally will be tantamount to a change of custody. Furthermore, in a case such as this where our review of the trial court's order is *de novo*, to reverse, rather than simply modify the trial court's order to comport with the majority's view of the dictates of the constitution, demonstrates great insensitivity to the situation in which a noncustodial parent is placed when the custodian systematically refuses to comply with a visitation order. In such circumstances, the evil to be remedied is delay, yet we compound the delay by reversing rather than simply affirming the order as modified. Today's decision will encourage more bitter parents to use their children as pawns in their pointless, egotistical battles with noncustodial parents. Because the law does not require this result, and because the majority's holding will have disastrous consequences for the children of these shattered families, I respectfully and earnestly dissent.