HICKS v. HOGAN.

1. CHANCERY PRACTICE: *Reference to a Master.*
   A reference to a Master to state an account between the parties, should not be made until the Chancellor first hears the cause upon the pleadings and evidence, and settles the equities between them. Then a reference may be made for such special inquiries, or statement of account, as may aid the court in making a definite decree. All matters of law should be first determined by the court, and fixed by decree, before making the reference.

2. SAME: *Making defendant's debtor a defendant.*

   A plaintiff in equity has no rights against the debtor of the defendant for the satisfaction of his demand, except by garnishment after decree; or in cases of attachment, when the statutory grounds for attachment exist. But if such debtor be made defendant in the first instance, and make no objection to the proceeding, he can not afterward object in the supreme court.

APPEAL from *Sebastian* Circuit Court in Chancery. Hon. J. H. ROGERS, Circuit Judge.

*Du Val & Cravens*, for appellant:

Argued that the exceptions to the Master's report should, on the evidence, have been sustained.

*M. H. Sandels, per contra:*

Upon the proof.

### STATEMENT.

EAKIN, J. Hogan filed this bill against Hicks, for the dissolution of a partnership alleged to have been entered into and carried on between them in the working of a saw and grist mill in the Indian Territory. He prayed a settlement of the partnership affairs between the partners themselves, and between the firm and its creditors. He claimed that upon such settlement a considerable sum of money would be due him from Hicks, who, he said, was insolvent; and, therefore, he made two others defendants, who were debtors of Hicks individually, to wit: Swearinger and Sanders; praying that they might be enjoined from paying Hicks, and he from collecting, until further orders; and that a receiver might be appointed.

An interlocutory injunction was granted.

Swearinger and Sanders answered separately, each admitting a certain indebtedness to Hicks, not due at the

time of service of the notice of injunction. Neither of them demurred to the bill, nor moved to be dismissed as improper parties.

Hicks answered, admitting that a partnership had existed from about the twenty-sixth of March, 1877, which, by its terms, was to have continued for a year; setting forth its terms according to his understanding, but says the complainant neglected the business, and managed badly, to its serious detriment; that a dissolution was, therefore, made by agreement, on the eleventh of July, 1877, and a settlement on the twelfth, wherein it appeared that complainant was indebted to him about $700; and he alleges that the books and accounts were surrendered to him by complainant to settle up the business. He prays for a dissolution of the injunction, and a decree for all that may be found due him on a trial, and for general relief.

Without evidence or a hearing, complainant and Hicks consented to an interlocutory decree that the partnership "heretofore existing" be "hereby dissolved and annulled;" and, by like consent, it was referred to a Master to take and state an account: First, between said partnership and the creditors thereof; and, second, between complainant and defendant; with authority to compel the production of books and papers, and to take evidence.

He reported, as the result of his inquiries, that Hicks was indebted to complainant, on the eleventh day of July, 1877, which he fixes as the termination of the partnership, in the sum of $474.50.

He makes, also, an alternative statement, by way of addenda, of the condition of the account between them as it would stand on the supposition that the partnership had continued to the end of its agreed term.

The court overruled all exceptions to the report in its first aspect, and adopting that, decreed against Hicks for

Hicks v. Hogan.

the sum so found; and against the two other defendants, that they pay into court the sum admitted by them to be due; to be applied in satisfaction of the decree, within a certain time; or that the complainant, on failure, have execution.

All the defendants appealed.

### OPINION.

This is an instance of a premature reference, which, being made by consent, can not be held erroneous, but requires comment in passing. The better practice is for the Chancellor, first, to hear the cause upon the pleadings and such depositions as may enable him to determine the principles to be applied in adjusting the equities of the parties, and then make a reference for such special inquiries, or statements of accounts, as may aid the court in making a definite decree. The line between the matters which the Chancellor may determine in the first instance, and those which, for convenience and dispatch of business, are more properly referable to a Master, can not, it is true, be drawn with precision; but it may serve as a guide, to say that all matters of law should, as far as possible, be first determined by the court, and fixed by decree; leaving for the Master only the investigation of such matters of fact as may be necessary to him in making a report, or statement of accounts, in accordance with directions in the decree. By this practice, the matters of law which inevitably arise before the Master, and which must at last be settled on exceptions, are narrowed down to a few, affecting only details, or items, whilst by the looser practice of a general reference by consent, the Master is made a sort of Vice-Chancellor, and almost all the equities of the case are finally determined on exceptions, after much unnecessary delay and expense. A Chancellor, after declining to per-

*1CHANCERY PRACTICE: Reference to Master.*

mit a general reference by consent, may often find, upon hearing, that he does not require the aid of a Master at all; or, if he does, the matters to be referred will be few and distinct, involving little delay or expense. A reference may always be made when found expedient, and the evidence and pleadings already in may be used.

In this case the parties consent to an interlocutory decree which dissolves (in the present tense) a partnership heretofore existing, and settles nothing else. The Master is directed to state an account between the partnership and its creditors, and also between its members. He is left to determine for himself when it began, and what amounted to a dissolution if anything did; what the terms of the partnership were, and what the interests of the several partners, in the capital stock and profits, and the time when the partnership closed. As to all these matters he is left wholly at sea, and has been driven to make alternative statements to meet either view of the case the court may adopt.

It is to be borne in mind that under our system the Master is not necessarily, nor usually a lawyer, but most commonly a business man, selected for clearness of judgment, and expertness in statements of accounts. He should be furnished with specific directions.

With these remarks, commended respectfully to the attention of Chancellors, we will consider this case upon all the equities presented by the record.

2. Making defendant's debtor a defendant. With regard to the defendants, Swearinger and Sanders, they are not charged in the bill with regard to any matters connected with the partnership, or as having control of any partnership effects which might be taken into the hands of a receiver. They are simply individual debtors of the defendant Hicks, against whom it can not appear that complainant has any rights, until decree. No doubt

they might have been garnisheed by the statutory process in attachment, which may be used in equitable as well as legal proceedings—the proper grounds being first laid as the statute requires. Or, as the statute is only cumulative, they might be subject to equitable garnishment, according to the old rules in equity, through injunction and sequestration, if they come within the principles under which this remedy is applied. But they do not, on the mere grounds of the insolvency of Hicks; and it may be said in general that there is no chancery practice authorizing a complainant 'before decree, and without any adjudicated right against a defendant, to seize upon his choses in action, or any other property not the subject-matter of the suit, to await the event. Of course there might be peculiar cases of fraud, which would be exceptional.

Nevertheless, the matter is not so foreign to the general jurisdiction of courts of equity, but that, in the absence of any objections made in apt time, the court may make a valid decree against such debtors, and as neither of them seems to have objected by demurrer or motion, it is too late upon appeal.

Appellants Swearinger and Sanders must abide the result of the appeal prayed by Hicks. See *King et al. v. Payan, 18 Ark., 583*, for citations of authorities, and remarks of Chief Justice English in *Mooney v. Brinkley, 17 Ark., 340*.

The aspect of the report adopted by the court is based upon the existence of the partnership from April 20 to July 11, 1877, to which estimate of time appellants make no objection. The evidence shows that about that time it virtually ceased, if not by consent, at least by acquiescence on the part of complainant in the act of Hicks in taking control of the books and effects, and assuming the whole

management for his own benefit. However that may be, complainant does not appeal.

The Master finds no debts against the firm, and but few outstanding, and they of small amount. As they are all found to be good, and the books are in Hicks'.hands, he is charged with them in full. There is no error in this.

The amounts used in making up the accounts between the parties are derived from the evidence in the transcript, and partly from books and admissions of the parties, which are not before this court. Of course we have nothing to show any errors in them. So far as we can see they accord reasonably well with such testimony as is in the record, and the presumption is in favor of the truth of the Master's statement.

Nothing is left but to examine the mode in which the account is stated, to ascertain if it be equitable. It is done by charging each partner with the full amount of partnership effects received, and complainant with half the expenses of running the mill paid by Hicks, whilst the latter is credited with half the expenses so paid by him in full. Each is then credited with his half interest in the aggregate partnership effects. From the excess thus found in the hands of Hicks, is deducted the amount of complainant's individual debt due him, and he is charged with the balance as a debt to complainant.

Upon trial it will be found that the same result will be reached by stating an account of each partner with the partnership; charging him with all partnership effects which came to his hands, and crediting him with all paid out for partnership purposes. Half the difference of these balances will be due to the one who has received least; from which, for a clean settlement, must be deducted any individual debt he may owe the other. Using the amounts

found by the Master, and adopting this method, the conclusion will be the same.

We find no error in refusing to sustain exceptions to the report.

Affirm the decree in all respects.