## CARLLEE v. STATE.

### Opinion delivered January 22, 1912.

1. CONTEMPTS—POWERS OF COURTS.—Courts of record and of general jurisdiction have inherent power to punish for contempts, and may go beyond the powers given by statute in order to enforce their constitutional powers when acts in contempt invade them.   (Page 124.)

2. CONSTRUCTIVE CONTEMPTS—PROCEDURE.—In contempts not committed in the court's presence, the court may initiate the proceeding to punish the contemnor by a statement or order spread upon the record, but notice thereof should be given to the defendant and a reasonable time afforded him to make his defense.   (Page 124.)

3. SAME—WHEN PROCEEDINGS QUASHED.—Where a majority of the court hold that a judgment punishing petitioners for contempt was erroneous, though they differ as to the particular errors committed, the judgment will be quashed on certiorari.   (Page 128.)

Certiorari to Woodruff Circuit Court, Southern District: *Hance N. Hutton*, Judge;   reversed.

#### STATEMENT BY THE COURT.

The petitioner, E. M. CarlLee, was adjudged guilty of contempt of court; fined $500 and six months' imprisonment in the county jail, and the case is before us on petition for certiorari to quash the judgment.

The facts necessary to state are as follows:

A citation was issued by the circuit clerk of Woodruff County on January 6 to the petitioner, in vacation, notifying him to appear in the circuit court on the first day of the March term, 1911, on Monday, March 6, to show cause why he should not be punished for criminal contempt for causing to be printed on or about the 3d day of September, 1910, in the *Arkansas Gazette*, a daily newspaper published in the city of Little Rock, of general circulation in the State, and Woodruff County, a certain article, setting it out, criticising the action of Judge Hutton, the judge of the circuit court, in the trial of a certain proceeding in his court and reflecting upon the dignity and integrity of the court.

Petitioner appeared in the court at the March term solely for the purpose of objecting to the jurisdiction, and filed a motion to dismiss, claiming privilege as a member of the General Assembly of the State of Arkansas, being a senator from his district, while the Legislature was in session on March 6, 1910, the day he was cited to appear.

This motion being overruled, he filed another motion, and objected to the jurisdiction of the court, alleging:

"That he respectfully submits that this honorable court is without jurisdiction to require the said E. M. CarlLee to respond to said rule for the reason that there was no affidavit or sworn information·filed in this proceeding, upon which to issue process, rule or summons as is herein attempted.

"He further respectfully submits that there is no sworn statement of facts or information as required by law in such proceedings, and therefore it is improper and illegal to require the said E. M. CarlLee to respond to.the rule issued in this proceeding."

The court overruled this motion, to which he excepted, and, expressly reserving his exceptions to the ruling of the court, he filed a response, denying that he caused the publication of the article set out in the citation and that he was guilty of contempt.

After hearing the testimony of witnesses and the petitioner, the court adjudged him guilty of criminal contempt and fixed his punishment at a fine of $500, with six months' confinement in the county jail, and remanded him to the custody of the sheriff.

Petitioner admitted that the article, as set out in the citation, appeared in the *Arkansas Gazette*, a newspaper published in the State, of general circulation in Woodruff County, and —————— Dew testified that he was the city editor for said paper, identified the article as published, and stated that he called for Mr. CarlLee over the long distance 'phone at Augusta, and requested a statement concerning the charge brought against him, Mr. Ludwig and Cain, in the circuit court of Woodruff County, for publication; that some one answered the 'phone, and said he was CarlLee, and dictated the statement over the 'phone virtually as it was printed. That he was very careful to take it as given, and
,

when he didn't understand had the person talking to repeat and talk slowly, that no mistake might be made, and none was made.

CarlLee denied having had any conversation at all with Dew over the 'phone and any acquaintance with him, but admitted that he did talk over the 'phone with Mr. Kiger, another reporter on the *Gazette,* making some of the statements set out in the publication, but denied all that portion of the same that would reflect in any wise upon the court. That he was personally well known to Kiger, and knew his voice over the 'phone, and knew that he was talking to him. Dew stated further that he was working in Kiger's place the night the message was received, that he (Kiger) might be off duty and spend the evening with his mother, who was visiting him.

*Roy D. Campbell,* for petitioner.

1.  The judgment is void for want of notice. 22 Ark. 151; Kirby's Digest, § § 722, 3989; Hughes, Cr. Pr. § § 1734-5-6-7 to 1742, and notes 12-18, pp. 447-9; 89 Ark. 72, etc.

2.  The penalty is excessive. Const. Ark. art. 7, § 26; Kirby's Digest, § 719; 34 Cyc. 1029, and cases cited.

3.  The commitment is irregular and void. Kirby's Digest, § § 721-3, 730; 46 Neb. 402; Hughes, Cr. Pr. § 1769; 9 Cyc. 50; 87 Ark. 45.

*R. J. Williams,* for respondent.

KIRBY, J., (after stating the facts). It is contended that the circuit court was without authority to punish the petitioner for a criminal contempt, not committed in its immediate view and presence, without an affidavit or information bringing the facts to its knowledge first made.

Courts of record and general jurisdiction have inherent power to punish for contempts and the conferment of the power by statute upon a superior court of record is deemed no more than declaratory of the common law. Such court may go beyond the powers given by statute in order to preserve and enforce its constitutional powers when acts in contempt invade them. Rapalje on Contempts, § 1; art. 7, § 26, Constitution 1874; *State* v. *Morrill,* 16 Ark. 384.

This charge was of criminal contempt, being directed against the dignity, integrity and authority of the court, and

constructive, not having been committed in its immediate presence.

In Brown on Jurisdiction, § 116, it is said: "In constructive contempts, the court can only act upon a showing of the facts invoking jurisdiction, and time should be given the accused to resist the charge."

Our statute provides "contempts committed in the immediate view and presence of the court may be punished summarily; in other cases, the party charged shall be notified of the accusation and have a reasonable time to make his defense." Section 722, Kirby's Digest.

In *York* v. *State*, 89 Ark. 76, the court said: "As to the mode of procedure in cases of contempt not committed in the immediate view and presence of the court, the authorities are well agreed that the contempt must be brought before the court on affidavits of persons who witnessed it, or have knowledge of it." Citing and quoting from *State* v. *Henthorne*, 26 Pac. 937.

But that proceeding was to punish as for contempt the violation of an injunction issued by the court, and the statute provides that it shall be done upon affidavit of breach of the injunction against the party committing the same. Section 3989, Kirby's Digest.

Nevertheless, it is contended that that case was for a civil contempt, growing out of conduct in disobedience of process for the protection of the rights of a party to a judicial proceeding, and that the rule as to procedure therein does not control here.

The authorities all agree that in cases of criminal contempt of this kind the accused is entitled to a distinct notice of the accusation against him and must be given a reasonable opportunity to present his defense, or, as expressed in our statute, "shall be notified of the accusation and have a reasonable time to make his defense."

There was no affidavit filed in this cause, setting out the publication and charge against the petitioner before the citation was issued, neither was there any statement of the facts constituting the charge made of record and signed by the judge in vacation, nor any order of the court, while in session, reciting that it had come to its knowledge that such publication had

been made, setting it out, and directing a citation to issue against the petitioner to show cause why he should not be punished for contempt for causing the publication and, if any such procedure was necessary, the petitioner did not waive it, having objected to the jurisdiction of the court specifically on that account.

In the case of *State* v. *Morrill*, 16 Ark. 386, the publication made was in a newspaper in Arkansas County, reflecting upon the Supreme Court in relation to a decision made by it. An attorney of the court, living there, called the court's attention to the publication, sending it a copy thereof and expressing an opinion that the court should take some notice of it. The court concluded that it was due to the honor and dignity of the State, and its own usefulness, not to pass the matter by without some official action, and to institute an inquiry as to whether its constitutional privilege had not been invaded by the publication and, "accordingly, an order was made, reciting the publication, and directing that the defendant be summoned to appear before the court at its present term to show cause why proceedings should not be had against him as for criminal contempt. No attachment, but a mere summons was issued in the outset, because the constitutional power of the court to punish as for contempt in such cases had not been determined, and was supposed to be not altogether free from doubt." Such was the statement of the procedure therein. A like course was pursued by the Supreme Court of California, In re *Shay*, 117 Pac. 442.

A great many of the authorities hold that it is necessary to decide whether the charge constitutes a civil or criminal contempt in order to determine the procedure for its punishment, and many of them seem to hold that if the contempt arises in disobedience of a judgment or order in a civil suit for the protection of the rights of one of the parties therein in a judicial proceeding it is a civil contempt, and that the accused can not be proceeded against without an affidavit of the charge first filed.

It appears to us, however, and especially in this State, when the punishment is inflicted for disobedience to the order of, and to compel a proper regard for, the dignity and authority of the court making it, and the proceeding is in the name of the State against the accused, as in other criminal offenses

and the fine and imprisonment are paid and discharged in the same way as fines and imprisonment inflicted in misdemeanor cases are satisfied, that there is in effect no difference.

The York case, *supra,* seems to be authority for this conclusion, and the United States Supreme Court appears to hold the same view. *Gompers* v. *Buck Stove & Range Co.,* 221 U. S. 448.

The spectacle of a court of record and general jurisdiction being without power to initiate a proceeding to punish for contempt the author of publications in the press of the State reflecting upon the dignity, integrity and honor of the court and judges, and calculated to bring it and them into public disfavor and contempt, without an affidavit of some third person first made setting out the charge, would be pitiful in the extreme, and was not contemplated by our statutes and under our Constitution. The court would thus be rendered impotent, powerless to protect its authority and enforce its mandates and retain the respect and confidence of the people, for whose benefit it was organized and exists, except by the grace of some third person.

Under our system of procedure, the accused is entitled to be informed with reasonable certainty of the facts constituting the offense with which he is charged and an opportunity to make defense thereto—his day in court. The different kinds of procedure have been outlined for the punishment of other offenses, but the statute, as to this one, says only that he shall be notified of the accusation and have a reasonable opportunity to make his defense.

There must be an accusation before the accused can be notified of it, and there is no reason why the court in session can not recite that the matter offending has come to its knowledge, setting it out in an order, and direct a citation thereon to show cause. This was done by the Supreme Court in the case of the *State* v. *Morrill, supra,* and was as effectual notice of the charge or accusation as an affidavit or information would have been. The summons and warrant of arrest are but to notify and bring the accused into court to answer the charges there made against him and the citation in this case, although it contains the whole matter constituting the offense with which the petitioner was attempted to be charged, was not a charge of record for him to answer, or an accusation within the meaning

of the statute, the notice having been issued in vacation, by authority of the clerk alone, so far as the record shows, there being no order of the court authorizing the issuance of the citation, and without an order of the court first made setting out the charge, or a statement thereof made of record and signed by the judge of the court in vacation.

The petitioner could have waived this irregularity in the procedure by appearing in court and making his defense, without objecting thereto, but he did not do this; he raised the objection and insisted upon it throughout.

It may be said that, since he could have waived the affidavit, certificate or order of record constituting the charge or accusation, having been in court and exercised his right to defend, he thereby did do so, and that no prejudice resulted to him on that account. This is the view held by Chief Justice McCULLOCH and Justice WOOD. But there is no difference between this and the case of a prisoner appearing and defending against a charge upon an insufficient indictment, when by objecting to it properly he may have it quashed, while, if no objection is made, he may be convicted and punished thereunder; and since objection was here made duly and in due time, the objection should have been sustained, and the court erred in overruling the motion to dismiss.

HART and FRAUENTHAL, JJ., are of the opinion that the court was without power to initiate the contempt proceeding as attempted, and that it was necessary that an affidavit or information setting out the charge should have been first filed, within the doctrine announced in the case of *State* v. *York, supra.*

This opinion is, therefore, only authoritative as to the power of the court to initiate the proceeding; the CHIEF JUSTICE, Mr. Justice WOOD and the writer concurring in this view.

It follows, however, since the other two Justices are of opinion that the court was without power to proceed without an affidavit first made, and the writer that the court erred in refusing to dismiss the proceeding upon the grounds set out for the reasons as already expressed, that the judgment must be quashed. It is so ordered.

McCULLOCH, C. J. I concur in the conclusion that in this character of contempt cases the court can initiate the pro-

ceedings, and that its jurisdiction to punish for contempt does not depend on the filing of an affidavit or information by some third person, as in cases of civil contempt. *York* v. *State*, 89 Ark. 76. The correct view is aptly stated as follows by the New York court in a case involving the construction of a statute identical with our statute on the subject:

"The statute does not require that the charge should be made upon affidavit or other sworn testimony. The charge may undoubtedly be made by the court, as it is alleged that it was in this case, and the charge is clearly specified in the order to show cause and a time appointed for showing cause, and the relator was duly notified of the accusation, and an opportunity given to him to make his defense. * * * It is an error to suppose that in a case like the present the jurisdiction of the court to make the order to show cause depends upon the presentation of affidavits or other evidence to substantiate the charge. The order contains the charge, and I apprehend that, in practice, such evidence will rarely be furnished, as it is not made the duty of any officer connected with the administration of justice, or any other person, to make charges or accusations of facts constituting criminal contempts. It is a duty imposed upon all courts to preserve order in court, and see to it that its proceedings are not interrupted, or that the respect and authority due to the court are not impaired. And the statute, to enable the court to discharge this duty, confers the necessary power upon the court. The court may act upon its own motion and make the accusation, causing the party accused to be notified, and giving him a reasonable time to make his defense." *Greeley* v. *The Court*, 27 Howard's Practice, 14.

In addition to the case just quoted from the following authorities sustain this view: In re *Cheeseman*, 49 N. J. Law, 115; *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass. 294, 44 L. R. A. 159; Ex parte *Steinman*, 95 Pa. St. 220; In re *Moore*, 63 N. C. 397; *Langdon* v. *Judges*, 76 Mich. 358; *People* v. *Wilson*, 64 Ill. 195; *State* v. *Frew*, 24 W. Va. 416; *State* v. *Shepard*, 177 Mo. 203.

The cases which hold to the contrary entirely ignore the distinction between civil contempts, where the court can not proceed unless so moved by a party aggrieved, and criminal contempts, where only the maintenance of the court's dignity

is involved.   In the latter class of cases it is primarily the duty of the court itself to see that it is not brought into public contempt by words or conduct of individuals.   It is not bound to wait for some third person to initiate proceedings, for it would be anomalous to say that the first duty rests with the court, and yet it must wait for some individual to institute proceedings before the court can take any steps to maintain its own dignity. I think no one can read Judge ENGLISH'S opinion in the Morrill case (16 Ark. 384) without being impressed with the idea that such was the view of the court on the subject.   Indeed, a careful analysis of the decision leads to the conclusion that that was what the court regarded as the proper practice, for the court did not treat the letter of the attorney as the basis of the proceedings.   The court proceeded entirely on its own initiative in bringing the accused to the bar of the court to answer for the alleged contempt.

In *Cossart* v. *State*, 14 Ark. 538, Chief Justice WATKINS used the following language:  "The power of punishing summarily and upon its own motion contempts offered to its dignity and lawful authority is one inherent in every court of judicature. The offense is against the court itself, and if the tribunal have no power to punish in such case, in order to protect itself against insult, it becomes contemptible, and powerless also in fulfillment of its important and responsible duties for the public good."

That case was a proceeding to punish as for contempt a contumacious witness who refused to testify in a case pending before the court, but the learned Chief Justice was attempting to lay down a principle which is applicable to all cases involving, not civil rights, but only the dignity of the court itself.

Since the majority of the court hold that the court can initiate proceedings of this kind, I think it should follow that when an accused has been given due notice, as in this case, of the particular form of his alleged contempt, the ends of justice are fully met, and that after he has been brought into court under such citation, none of his rights have been prejudiced by the court's failure to enter of record an order reciting the charge. The accused when he came into court had due notice of the charge which he was called on to meet, and that is all the statute required.   The citation had served its purpose, in bringing

the accused into court, and, having had notice of the charge, he was not prejudiced by the fact that it had not been previously entered on the record during the sitting of the court. The court could have ordered a new citation, and can do so yet. Therefore no prejudice resulted from the proceeding without a new citation. It is making too strict a rule to say that the court must make an order of citation in advance before it can proceed to punish for contempt.

As to the amount of punishment inflicted, I am of the opinion that the statutory limitation applies, and that, as the contemptuous conduct was not committed in the immediate presence of the court and did not consist of disobedience of the process of the court, the punishment should not have exceeded that provided by the statute.

WOOD, J.: I concur.