JOHN A. DAVIS, BILL R. HOLLAND, AND THE FIRM OF BRIDGES, YOUNG, MATTHEWS AND DAVIS v. HON. JAMES MERRITT, CHANCELLOR

5-5715                                   480 S.W. 2d 924

Opinion delivered May 22, 1972

*Bridges, Young, Matthews & Davis,* for petitioners.

*Clifton Bond & William E. Johnson,* for respondent.

Eugene A. Matthews, Special Justice.

I. *Summarization of factual background of case.*

This Petition for Writ of Prohibition to the Chancery Court of Desha County, McGehee District, grows out of Motion filed by Petitioners on August 25, 1970, in the case of Pine Bluff Production Credit Association, et al, v. H. G. Lloyd, et al, Chancery Case No. 763 to set aside "summarized findings and conclusions" signed by the Respondent on Auguest 12, 1970, and filed with the Clerk of Court on August 13, 1970, such Motion alleging that the entry of the summarized findings and conclusions was prompted by bias and prejudice on the part of the Court towards Petitioners as demonstrated in a telephone conversation between two of Petitioners and the Court on August 12, 1970; and, praying that the Respondent disqualify himself in connection with the determination of the Motion and any further proceedings in the case.

Thereafter, on September 2, 1970, the Respondent signed a final decree in Case No. 763 which was filed with the Clerk of Court in Desha County on September 3, 1970. On September 15, 1970, Petitioners filed an amendment to the Motion which they had filed in the Desha Chancery Court on August 25, 1970, in which they renewed the prior motion, further alleging that the entry of the decree on September 3, 1970 was prompted by bias and prejudice on the part of the Court toward Petitioners and praying that Respondent disqualify himself in connection with any proceedings in the case; that a Special Judge be assigned by the Judicial Department

of Arkansas; or, in alternative, order a new trial; and, that the summarized findings and conclusions entered by the Court on August 12, 1970 and the decree entered in Case 763 on September 3, 1970 be set aside. To this amended motion was attached the affidavit of John A. Davis and Bill R. Holland setting out their version of the telephone conversation with the Respondent on August 12, 1970.

Thereafter the case of Pine Bluff Production Credit Association, et al, v. No. 763, H. G. Lloyd, et al, was appealed from the Chancery Court of Desha County, McGehee District, to this Court, and is now pending in this Court as No. 5598. On June 10, 1971, Petitioners filed in this Court their abstract of pleadings and testimony in Case No. 5598 (Case No. 763 in the lower court) and their brief. In the Abstract of Pleadings the Motion filed in the Chancery Court on August 25, 1970, the amendment to such Motion filed on September 15, 1970, in the Chancery Court, together with the affidavits of John A. Davis and Bill R. Holland, all as hereinabove referred to, were set forth, and in Petitioners' brief the allegations of bias and prejudice on the part of the Respondent were argued as Point One of such brief.

Copies of the Abstract and Brief filed by Petitioners in this Court in Case No. 5598 were received by the Respondent on June 11, 1971.

On June 23, 1971, the Respondent entered an order in Desha Chancery Case No. 874 captioned:

*In the matter of the appointment of a committee to investigate John A. Davis, Bill R. Holland, and, the law firm of Bridges, Young, Matthews & Davis for alleged contempt of court and violation of canons of professional ethics.*

in which Order a recital was made of the receipt of the aforementioned Abstract and Brief by Respondent on June 11, 1971; reciting that one copy of the Abstract, referred to as Volume One (1), and one copy of the Brief referred to as Volume Two (2), of Appellants (Peti-

tioners) had been filed in Case No. 763 pending in the
Desha Chancery Court and were a part of the record.
The Order went on to say:

> "* * *These two volumes have been read by the
> Chancellor of this Court and the contents and/or
> substance thereof made known in open Court on
> this date. The statements, affirmations, references
> and charges, along with the referred to record made
> by John A. Davis, Bill R. Holland, and the law firm
> of Bridges, Young, Matthews and Davis appearing
> in said volumes may constitute contempt of Court,
> violation of the Code of Professional Ethics, per-
> jury and criminal slander.

> "The Court on its own motion, finds that a com-
> mittee should be appointed, composed of solicitors
> of the Bar of the Second Chancery Circuit, Arkansas,
> to conduct an investigation of the statements, af-
> firmations, references and charges, along with the
> referred to record made by John A. Davis, Bill R.
> Holland, and the law firm of Bridges, Young, Mat-
> thews and Davis, found in Volume One (1) and Two
> (2) aforementioned, and report this to the Court,
> whether or not in their opinion, based on their in-
> vestigation, any part or portion of said volumes con-
> stitute contempt of court or violation of the Code of
> Professional Ethics.* * *"

A three-member committee of lawyers practicing in the
Second Chancery Circuit were then named to conduct
the investigation and report their findings to the Court
on or before September 4, 1971. It directed that the Com-
mittee should convene within ten (10) days from the
receipt of a copy of the Order from the Clerk of the
Court and organize by electing one committeeman as
Chairman, another as Vice-Chairman and the other as
Secretary, and thereafter proceed with the investigation
therein ordered by the Court. The Order then stated:

> "* * *The said committee or any designated member
> is authorized to accept, hear and take evidence dur-
> ing said investigation, either by affidavit, statement

or oral examination. The Court reporter of this Circuit should serve as reporter for said committee to report any evidence directed to be taken by the committee or other proceedings of the committee, and in the event of his inability to serve, the committee is authorized to employ a reporter for the purpose of the investigation. The Clerk of this Court is authorized to issue subpoena(s) for witnesses upon request of any member of the committee and the Sheriff is authorized to serve said issued writ(s) upon the person therein designated for service."

The Order then continued that while the authority and powers of the committee were not being circumscribed, and that it was granted full power and authority to conduct the investigation therein ordered to ascertain the true facts and report to the Court, but said Committee should specifically ascertain the following:

"1.  Did the law firm of Bridges, Young, Matthews and Davis authorize their name to be printed on volume One (1) and Two (2)? (a) Who are the members of the aforenamed law firm? (b) What member or members wrote the volumes? (c) What members of the firm authorized, knew or had knowledge of the contents of the volumes? (d) Were the statements contained in said volumes written at the request, direction or instance of the appellants? (e) Did the appellants have knowledge of the contents of said volumes and confirm or ratify said statements? (f) Who paid for the printing of said volumes? (g) Have the volumes been filed with the Clerk of the Supreme Court? (h) What distribution has been made of said volumes?

"2.  Were the statements, affirmations, references and charges, along with the referred to record made by John A. Davis and Bill R. Holland in the form of an affidavit, made by the law firm of Bridges, Young, Matthews and Davis directed toward the Chancellor of this Court and this Court was it essential, necessary and material to the adjudication of the appeal by the Supreme Court? (a) If not, why were

these statements, affirmations, references and charges placed in the volumes?

"3. Does the laws of the State of Arkansas require Courts of Chancery to file or make detailed findings of fact and authorities in the adjudication of actions in said Courts?

"4. Ascertain and determine the true facts surrounding and the events transpiring when John A. Davis attempted to call by telephone the Chancellor of this Court on August 12, 1970? (a) Report this in detail with the words spoken. (b) Was Davis authorized to communicate by this means with the Chancellor? (c) Ascertain and determine if there was any pleadings filed in the office of the Clerk in the case of Pine Bluff Production Credit Association v. Lloyd, No. 763 which would have authorized the Chancery Court to act on the question of the sale of assets of the defendants in said action? (d) Ascertain and determine if Courts of Chancery in this State conduct the proceedings of said courts by conference telephone connection? (e) Ascertain and determine if the Chancery Courts of the Second Chancery Circuit conducts its proceeding by telephone?

"5. Ascertain if the 'bias and prejudice' charged against the Chancellor of this Court was sufficient in law to disqualify him in the adjudication of the action? (a) Ascertain if there in fact existed any 'bias and prejudice'? (b) Ascertain and determine why the motions referred to in said volumes relating to the Chancellor of this Court, and said Court were not presented to the Court when the same was in open session, pursuant to order, on September 5, 1970? (c) Ascertain and determine if the Chancellor of this Court had notice of the filing of said motions?

"6. Ascertain and determine if the Chancellor of this Court is guilty or innocent of the charge of violation of 'Canon No. 22 of the Canons of Judicial Ethics (p. 7 of vol. 2)?

"7. Ascertain and determine if the statements, affirmations, references and charges in volumes One (1) and Two (2) are 'false accusations against a Judge (the Chancellor of this Court)?

"8. Ascertain and determine if there exists any constitutional or statutory authority for the Supreme Court of Arkansas to conduct a trial of a Chancellor of a Chancery Circuit of Arkansas, and enter an order disqualifying him from adjudicating an action pending in the Chancery Court, where no showing is made under Section 20 of Article 7 of the Constitution of Arkansas with the proceedings a part of an appeal in a certain action, with the charge being based on the Exparte statements of the appellants lawyers, and the Chancellor not as a party or given an opportunity to be heard on the charge?

"9. Ascertain and determine when the findings in case No. aforenamed was drafted by the Chancellor?

"10. Ascertain and determine if the affidavit appearing on pages 63/64/65/66/67/68 of volume One (1) was filed by the named affiants for the purpose of the record to create an atmosphere in which to try a de novo appeal in the Supreme Court? (a) Ascertain and determine why the 'Motions' referred to in volumes One (1) and Two (2) were not presented to this Court on September 5, 1970, when the Court was in regular session pursuant to order entered by direction of Act 11 of 1955, Act 244 of 1957 and Act 358 of 1969, or on the other regular dates when the Court in regular session, or by notice under Section 22-408.2 of the Statutes of Arkansas, or by action under Section 27-2106.4, supra? (b) Ascertain and determine why the statement(s) on page 7 of volume Two (2) were made that 'no hearing was granted' if the 'Motions' were not presented to the Court?

"11. Ascertain and determine what 'Correspondence

with the Court (p. 7, Vol. Two (2) was had as mentioned by the attorneys for the appellants?

"12. Ascertain and determine if a lawyer is authorized to communicate with a judicial officer by telephone concerning a case under submission when there are no pleadings filed seeking interim relief? (a) Does a judicial officer have a right to allow lawyers to have private interviews with him concerning actions pending in the Court over which the judicial officer presides?

"13. Ascertain and determine if the Chancellor of this Court is 'temperate, attentive, patient (and) impartial'. (a) What has been his attitude toward counsel, litigants, and especially to 'young and inexperienced lawyers'?

"14. What has been the policy of the Chancellor in announcing disqualification in actions before the Chancery and Probate Courts?

"That upon the filing of said report by said Committee this Court will take further action in this matter consistent with the facts, and if the report shows any violations, then a committee will be appointed to draft and file charges against the alleged violators in this Court and the Supreme Court of Arkansas."

Thereafter, Petitioners, on June 25, 1971, filed in this Court—Case No. 5-5715—their Petition for a Writ of Prohibition to which was attached as Exhibit "A" a copy of the foregoing Order of the Desha County Chancery Court entered on June 23, 1971. Petitioners praying that a Temporary Writ of Prohibition be entered prohibiting any further proceeding in connection with the Order of the Desha Chancery Court of June 23, 1971, in its Case No. 874, and upon final determination of the matter, such Writ of Prohibition be made permanent and the said Desha County Chancery Court Order be cancelled and set aside. On June 28, 1971, a Temporary

Writ of Prohibition was granted and the parties directed to file briefs in accordance with Rule 16(c).

*II. Rulings on Respondent's motion to strike, demurrer to petition and motion to dismiss petition.*

The Respondent, on June 28, 1971, filed his response to Petition for Writ of Prohibition and included therein a demurer based upon the allegations that the Petition was directed against the Respondent as Chancellor of Desha County, Arkansas, when the Order showed on its face that it was not entered by a Chancellor but by the Chancery Court of Desha County, Arkansas, in open Court, and a Motion to Dismiss on the ground that the action for Writ of Prohibition by Petitioners had been prematurely commenced and that the Petition for Writ of Prohibition did not allege facts to show irreparable injury to the Petitioners.

On August 3, 1971, Petitioners filed their amendment to the Petition and Reply to Response to Petition for Writ of Prohibition to which were attached as exhibits: (a) copy of Motion of Production Credit Corporation et al to set aside summarized findings and conclusions. Exhibit "A"; (b) copy of renewed and supplemental Motion to set aside summarized findings and conclusions and decree. Exhibit "B"; (c) affidavit of John A. Davis and Bill R. Holland in support of renewed and supplemental motion. Exhibit "C"; (d) copy of Points to be relied on in Case 5598. Exhibit "D"; and, (e) copy of argument on Point One in Case 5598. Exhibit "E".

On August 31, 1971, Respondent filed his reply to amendment to petition and reply to response to petition for Writ of Prohibition and attached thereto his affidavit giving his version of the telephone call from John A. Davis and Bill R. Holland on August 10, 1970, and of the events which transpired later that day. On this same date Respondent filed his Motion to Strike parts (a), (b), (c), (d), (e) of the Amendment to Petition filed by Petitioners on August 3, 1971, and Exhibits "A" through "E", both inclusive attached to said amendment.

On September 10, 1971, Petitioners filed their response to Motion to Strike. On September 13, 1971, Respondent's Motion to Strike was submitted to this Court and by per curiam order entered on September 20, 1971, it was denied. In like manner the Court overrules Respondent's Demurrer to Petition for Writ of Prohibition filed June 28, 1971, and denies Respondent's Motion to Dismiss filed on the same date.

### III. Issues to be decided.

Respondent, in his brief at Page 2 states, "The issue in this action is the jurisdiction of the Chancery Court of Desha County, Arkansas, to make and enter the order in issue." (The order of June 23, 1971 entered by the Chancery Court of Desha County, Arkansas in its Case No. 874, which is summarized above.). We agree with that statement of the issues to be determined in this matter.

In his brief, filed in this Court, Respondent further states:

"The Order, the subject of this action, refers to: (A) contempt of Court, (B) violation of the Code of Professional Ethics, (C) perjury, and (D) criminal slander."

Respondent in his brief recognizes that the Chancery Court of Desha County, Arkansas, is not vested with criminal jurisdiction (State v. Martineau, 149 Ark. 237, 232 S.W. 609, and City of DeQueen v. Fenton, 98 Ark. 521, 136 S.W. 945) but states that facts constituting a criminal offense may constitute contempt of court. Thus, we shall discuss whether the Court exceeded its jurisdiction in appointing the committee to conduct an investigation and report to the Court whether or not in their opinion, based on their investigation, any part of Volumes One (1) and Two (2) constituted contempt of court or violation of the Code of Professional Ethics.

## A.
### Contempt of Court

The Arkansas State Constitution provides in Article VII, Section 26, as follows:

"Punishment of indirect contempt provided for by law.—The General Assembly shall have power to regulate by law the punishment of contempts not committed in the presence or hearing of the courts, or in disobedience of process."

Section 34-901 of the Arkansas Statutes Ann., 1962 Replacement, provides in part:

"Criminal Contempt—What Constitutes.—Every court of record shall have power to punish, as for criminal contempt, persons guilty of the following acts, and no others.

"First, Disorderly, contemptuous or insolent behaviour, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority. * * *"

Section 34-903 of the Arkansas Statutes, Ann., 1962 Replacement, reads as follows:

"Contempts in presence of court—Summary punishment—Notice of charge in other cases.—Contempts committed in the immediate view and presence of the court, may be punished summarily; in other cases, the party charged shall be notified of the accusation, and have a reasonable time to make his defense."

In the case of Blackard v. State, 217 Ark. 661, 232 S.W. 2d 977, this Court said:

"Criminal contempt proceedings are those brought to preserve the power and vindicate the dignity of the court and to punish for disobedience of its or-

ders. Civil contempt proceedings are those instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made for the benefit of such parties. * * *''

This Court has recognized two classes of contempt: (a) direct contempt being an act committed within the immediate presence of the Court, and (b) constructive contempt, an act directed against the dignity, integrity, and authority of the Court but not having been committed in its immediate presence. The above cited Statutes recognize these distinctions.

The Respondent, in his response to the petition for a Writ of Prohibition filed in this Court on June 28, 1971, stated: "An examination of the briefs (Vols. One (1) and Two (2) referred to in the above order) caused a conclusion to be drawn that the Petitioners herein might be guilty of constructive contempt of the Chancery Court of Desha County, Arkansas* * *Further, Such Motions Filed in the Chancery Court, the Charges, Statements, Affirmations and References Made by the Petitioners in Said Briefs Might Constitute Criminal Contempt * * *". In his brief Respondent states: "The alleged contempt of court referred to in the order to issue sounds in constructive, indirect or consequential contempt of court." While we are not called upon to decide whether the order entered in Case No. 874 in the lower court, as summarized above, referred to a possible charge of direct contempt or one of constructive contempt, it is clear from what has just been said that the Respondent in its pleadings filed in this Court and in its brief filed in this Court, treated the matter as one of constructive contempt.

In the case of Lee v. State, 102 Ark. 122, 143 S.W. 909, this Court, in sustaining a petition for certiorari to quash a judgment of contempt entered against the petitioner in the lower court, said:

"It is contended that the circuit record was without authority to punish the petitioner for a criminal contempt, not committed in its immediate view and presence, without an affidavit or information bring-

ing the facts to its knowledge first made. Courts of record and general jurisdiction have inherent power to punish for contempts and the conferment of the power by statute upon a superior court of record is deemed no more than declaratory of the common law. Such court may go beyond the powers given by statute in order to preserve and enforce its constitutional powers when acts in contempt invade them. Rapalje on Contempts, Sec. 1; art. 7, Section 26, Constitution; State v. Morrill, 16 Ark. 384. This charge was of criminal contempt, being directed against the dignity, integrity, and authority of the court, and constructive, not having been committed in its immediate presence. In Brown on Jurisdiction, Sec. 116, it is said: 'In constructive contempts, the court can only act upon a showing of the facts invoking jurisdiction and time should be given accused to resist the charge.' Our statute provides 'contempts committed in the immediate view and presence of the court may be punished summarily; in other cases, the party charged shall be notified of the accusation and have a reasonable time to make a defense.' Section 722, Kirby's Digest.

\* \* \*

"There was no affidavit filed in this cause, setting out the publication and charge against the petitioner before the citation was issued, neither was there any statement of the facts constituting the charge made of record and signed by the judge in vacation, nor any order of the court, while in session, reciting that it had come to its knowledge that such publication had been made, setting it out, and directing a citation to issue against the petitioner to show cause why he should not be punished for contempt for causing the publication, and if any such procedure was necessary, the petitioner did not waive it, having objected to the jurisdiction of the court specifically on that account.
\* \* \*

"Under our system of procedure, the accused is en-

titled to be informed with reasonable certainty of the facts constituting the offense with which he is charged and an opportunity to make defense thereto—his day in court. The different kinds of procedure have been outlined for the punishment of other offenses, but the statute, as to this one, says only that he shall be notified of the accusation and have a reasonable opportunity to make his defense. There must be an accusation before the accused can be notified of it, and there is no reason why the court in session cannot recite that the matter offending has come to its knowledge, setting it out in an order and direct a citation thereon to show cause. * * *"

See also ex parte Coulter, 160 Ark. 550, 255 S.W. 15; Hall v. State, 237 Ark. 293, 372 S.W. 2d 603.

Parenthetically, let it here be said that this opinion should not be construed as in any manner weakening the principle of law enunciated by this Court in the case of State v. Morrill, 16 Ark. 384, and since re-stated in Weldon v. State, 150 Ark. 407, 234 S.W. 466, and many other decisions of this Court. In the Morrill case it was said:

"It was argued by the counsel for the defendant, that the court must look to the statute for its power to punish contempts, and not to any supposed inherent power of its own, springing from its constitutional organization. That it is controlled by the statute, and cannot go beyond its provisions. In other words, that the will of a co-ordinate department of the government is to be the measure of its power, in the matter of contempts, and not the organic law, which carves out the land-marks of the essential powers to be exercised by each of the several departments of the government.

"In response to this position, we say, in the language of Mr. Justice Scott, in Neil v. State, 9 Ark 263, that : 'The right to punish for contempts, in a summary manner, has been long admitted as inherent in all courts of justice, and in legislative assemblies,

founded upon great principles, which are coeval, and must be co-existent with the administration of justice in every country, the power of self-protection. And it is only where this right has been claimed to a greater extent than this, and the foundation sought to be laid for extensive classes of contempts not legitimately and necessarily sustained by these great principles, that it has been contested. It is a branch of the common law, brought from the mother country and sanctioned by our constitution. The discretion involved in the power is necessarily, in a great measure, arbitrary and undefinable, and yet, the experience of ages has demonstrated that it is compatible with civil liberty, and auxiliary to the purest ends of justice, and to the proper exercise of the legislative functions, expecially when these functions are exerted by a legislative assembly.'

"And in the language of Mr. Chief Justice Watkins in Cossart v. The State, 14 Ark. Rep. 541; 'The power of punishing summarily and upon its own motion, contempts offered to its dignity and lawful authority, is one inherent in every court of judicature. The offense is against the court itself, and if the tribunal have no power to punish in such case, in order to protect itself against insult, it becomes contemptible and powerless, also in fulfillment of its important and responsible duties for the public good. * * *''

In this case, the basis of any alleged charge of contempt of court was a matter within the knowledge of the Chancellor himself inasmuch as the motion filed in the Desha County Court on August 25, 1970 and the renewed and supplemental Motion filed in that case on September 15, 1970, to which were attached the affidavits of Petitioners John A. Davis and Bill R. Holland, all related to a purported telephone conversation between Davis and Holland and the Chancellor on August 12, 1970, and the act of the Chancellor in filing his "summarized findings and conclusions" in Case No. 763 on Ausust 13, 1970, and his entry of decree in the case which was filed with the Clerk on September 3, 1970. These

statements were reiterated in Petitioners' abstract and brief as referred to in the above order.

The Court did not see fit to cite the Petitioners summarily for the alleged contempt nor did it file, or cause to be filed, an accusation against the Petitioners, cause them to be notified of the accusation and give them a reasonable time within which to make their defense.

Instead, the Court, in its order entered June 23, 1971, appointed a committee of three lawyers practicing in the Second Chancery Circuit in Arkansas to conduct an investigation and to report to the Court whether or not, in their opinion, based on their investigation, any part or portion of Volumes One (1) and Two (2), filed with this Court in Case No. 5598 and in the Chancery Court in case No. 763, constituted contempt of court or violation of the Code of Professional Ethics; further stating that upon the filing of said report by the Committee the Court would take further action in the matter consistent with the facts, and if the report showed any violations, then a committee would be appointed to draft and file charges against the alleged violators in the Chancery Court and the Supreme Court of Arkansas.

We find this order exceeded the jurisdiction of the Chancery Court both as to the possible charge of contempt and, as we will hereinafter discuss, the possible charge of violation of the Code of Professional Ethics.

The order, in effect, purported to confer upon the three committee members the right to conduct a preliminary trial of the Petitioners, granting the committee, or any designated member of the committee, the authority to accept, hear and take evidence during said investigation, either by affidavit, statement, or oral examination, without granting to Petitioners the right to present evidence upon the issues involved, nor did it provide any method by which Petitioners could test the truthfulness of evidence taken by "affidavit", "statement" or "oral examination". The order further authorized the Clerk of the Court to issue subpoenas for witnesses upon request of any member of the committee and authorized

the Sheriff to serve such issue writs upon the person therein designated for service. Again, no provision was made for subpoenas to be issued at the request of Petitioners and had the investigation proceeded it would have been solely within the discretion of the committee as to the witnesses to be heard.

We are not impressed with Respondent's argument that the members of the committee were in effect, "Masters in Chancery", to take the proof and file their report. They were not designated in the order as "Masters" but as a "committee" to investigate the acts of Petitioners; the record of proceedings in Desha Chancery Court in Case No. 874, in which the order was complained of was entered, does not reflect that the members of the committee were sworn in open court as required by Section 27, 1802 of the Arkansas Statutes, Ann., 1962 Replacement, which provides:

"Oath—Every master before entering upon the duties of his appointment, shall be sworn in open court, faithfully and impartially to perform the duties of his appointment, which shall be entered on the minutes."

The aforementioned record of proceedings does reflect a letter from one member of the committee to the other two members and the Clerk of Court in which it is stated: "The only action taken by the committee to date to my knowledge is a meeting on June 30, 1971, wherein Mr. Roberts was elected Chairman, Mr. Barker elected Secretary-Treasurer and I was elected Vice-Chairman. This was done without knowledge of said Writ." (referring to Temporary Writ of Prohibition issued by this Court.) This action certainly indicates that the members of the committee felt that they were acting as a committee and not as masters in chancery. Further, Section 27-1801 of the Arkansas Statutes, Ann., 1962 Replacement, provides as follows:

"Powers of Masters.—Each master in chancery shall have power to take testimony and to administer oaths and to compel the attendence of witnesses in all matters referred to him, and to do and perform all such

other ministerial acts as are commonly performed by a master in chancery."

The Respondent has been on the bench for many years and had he considered the members of the committee to be masters in chancery, he would not have considered it necessary to confer subpoena powers upon the committee, to authorize the Clerk to issue such subpoenas and the Sheriff to serve them. Nor would he have found it necessaary in such order to appoint the Court Reporter of the Circuit to serve as reporter for said committee to report any evidence directed to be taken by the Committee or other proceedings of the committee. Section 27-1806 of the Arkansas Statutes, Ann., 1962 Replacement, provides that the master shall reduce to writing the testimony of all witnesses examined by him, and shall have power to commit such witnesses as may refuse to testify.

In the case of State ex rel. Purcell v. Nelson, 246 Ark. 210, 438 S.W. 2d 33, this Court said:

"(16—29) In his first pretrial order, the chancellor appointed a Special Master, and instructed him to prescribe rules for the expeditious and orderly progress of the tasks with which he was charged, and to proceed with hearing of evidence and ruling upon all matters of fact and law incident thereto. The master was directed, upon completion of the presentation of evidence, to prepare and file his recommended findings of fact and conclusions of law and a proposed decree. In this respect, the trial court was proceeding illegally. Before a master is appointed, the main issue establishing the rights of the parties should be determined so that definite directions can be given to the master for his guidance. Hicks v. Hogan, 36 Ark. 298; Fullenwider v. Bank of Waldo, 101 Ark. 259, 142 S.W. 149. It was pointed out, in Hicks v. Hogan, that the chancellor should hear the cause upon the pleadings and such evidence as may enable him to determine the principles to be applied in adjusting the equities of the parties and then make a reference to a master for such special in-

quiries or statements of accounts as may aid the court in making a definite decree. The decision in La Buy v. Howes Leather Co., 352 U. S. 249, 77 S. Ct. 309, 1 L. Ed. 2d 290 (1957) involved the application of the very same principle to an antitrust case which included charges of monopoly and price fixing under the Sherman Act. In that opinion, the United States Supreme Court stated that the use of masters was to aid judges in the performance of specific judicial duties as they arise and not to displace the court. They held that the appointment of a master and a reference at the inception of the case is to take evidence and to report the same to the court with his findings of fact and conclusions of law was an action beyond the court's powers. There, as here, an effort was made to support the reference by reason of anticipation of a lengthly trial, complexity of the issues and congestion of the court's calendar. We agree with the Supreme Court of the United States that these reasons do not constitute sufficient grounds for the virtual displacement of the court by a Special Master. While we can conceive of situations in which a reference of particular matters may be made to a master during the course of litigation, a reference as broad as the one involved here is clearly in excess of the court's jurisdiction and in that respect the court proceeded without authority of law. Jones v. Adkins, 170 Ark. 298, 280 S.W. 389, relied upon by appellees, is not contrary to this view. The only issue there was an accounting, for which purpose we have always recognized the power of the court to appoint a master. If this case should reach the point where the only issue remaining is a matter of accounting, the appointment of a master would be appropriate."

In this case there was no action pending but only an ex parte proceeding appointing a committee to investigate the possible contempt of court or violation of the Code of Professional Ethics on the part of the Petitioners. The record does not show the issuance of summons to be served upon Petitioners, but rather that the matter was, as stated, an ex parte proceeding. Thus, we conclude

that the members of the committee were not acting as masters in chancery.

While the committee was not limited in its investigation to the fourteen specific points contained in the Court's order as set forth above, we have set them forth in detail in order to demonstrate their wide range, there being contained therein many items going both to the possible charge of contempt of court and the possible charge of violation of professional ethics, as well as many questions the answers to which were peculiarly within the knowledge of the chancellor.

Neither in the exercise of the Court's inherent power to punish for direct contempt nor in the exercise of its power to file, or cause to be filed, a charge of constructive contempt, do we find any constitutional, statutory, or case law which would justify the entry of the above order. The order did not purport to direct or authorize the committee to file charges against the petitioners in the event their investigation showed probable cause but stated that upon the filing of said report by the committee, the court would take further action in the matter consistent with the facts and if the report showed any violations, then a committee would be appointed to draft and file charges against the alleged violators in the Chancery Court and in the Supreme Court of Arkansas.

## B.

### Violation of the Code of Professional Ethics.

Clearly, the Chancery Court exceeded its jurisdiction in its order of June 23, 1971, when it directed the committee to conduct an investigation of the statements contained in the abstract and brief (designated as Volumes 1 and 2, respectively in that order) and report to the Court whether or not in their opinion, based on their investigation, any part or portion of said volumes constituted a violation of the Code of Professional Ethics.

In the general election of 1938, Amendment No. 28 to our Constitution was adopted. It reads:

"The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." 1 Ark. Stats. Ann., 228.

Rules regulating the professional conduct of attorneys at law were adopted by this Court on April 24, 1939, such rules providing for a Bar Rules Committee to be appointed by the Court. Armitage v. Bar Rules Committee, 223 Ark. 465, 266 S.W. 2d 818. By order dated June 2, 1969, effective June 15, 1969, the rules were amended and the committee is now called Supreme Court Committee on Professional Conduct. Record of Proceedings, Supreme Court, Book C-46, Page 551, et seq.

The exclusive jurisdiction of the Bar Rules Committee, now the Supreme Court Committee on Professional Conduct, is well illustrated in the case of *Hurst* v. *Bar Rules Committee of the State of Arkansas,* 202 Ark. 1101, 155 S.W. 2d 697 (1941), where we said:

"This court in several cases prior to the adoption of Amendment No. 28, and the promulgation of rules by this court under the authority of this amendment, has sustained the power to disbar an attorney as inherent in all courts to protect the courts and the public, as well as to maintain the honor of the profession, * * *

"Now, since the adoption of the rules by this court, and the appointment of the Bar Rules Committee to act under these rules, it becomes the duty of the Bar Rules Committee 'to make investigation of all complaints of professional misconduct that might be brought to its attention, in the form of an affidavit, or in response to any information, of which any member of the committee may have.' They are required to give the accused attorney an opportunity to explain or refute the charge, and after a hearing if they think the facts warrant it, it is their duty to cause a complaint to be filed in the court against the attorney, who, after reasonable notice, not less than 20 days, is entitled to a trial before the circuit judge or chancellor. This throws an additional pro-

tection around the attorney and thus before he is convicted, he has had the opportunity of a hearing before two tribunals.''

In the case of *Armitage* v. *Bar Rules Committee, supra,* it was stated:

"* * * The Committe's creation and existence in this Court's determination that an impartial tribunal should consider complaints of professional misconduct, sift substantial accusations from charges based upon personal pique, disappointment, or prejudice, and then, in respect of serious implication, permit the attorney to explain the transaction and, when he so desires, bring witnesses before the Committee to substantiate his position.

"By this process minor professional deviations are disposed of justly without public embarrassment. * * *''

In the matter of Supreme Court License Fees, 251 Ark. 800, 483 S.W. 2d 174, this Court stated:

"In 1938 the people of Arkansas adopted Constitutional Amendment 28, consisting of a single sentence: 'The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law.' The language of the Amendment is mandatory, affirmatively imposing upon this Court the duty of making and enforcing rules governing the practice of law and the conduct of lawyers. The duty necessarily extends to the enforcement of the rules as well as to their promulgation, for without enforcement the purpose of the Amendment would fail.''

Under the rules, attorneys against whom charges are made are given the opportunity to explain or refute such charges during the committee investigation and then, if the committee finds reasonable grounds to believe misconduct exists, it may either caution, reprove or reprimand the attorney or file charges in the Circuit or Chancery

Court. Such rules afford both the committee and the attorney the right to subpoena witnesses and provide for an appeal to this court by either party.

We agree with Petitioners' argument that the June 23rd order entered by the Chancery Court of Desha County, Arkansas, purporting to launch an investigation into the professional conduct of Petitioners, clearly circumvents the procedure established by this Court pursuant to amendment 28 and contravenes the fundamental reasons for the creation of a committee on professional conduct. Again, we agree with Petitioners' statement that the order of June 23, 1970 entered by the Chancery Court in its Case No. 874, is contrary to this Court's order establishing the committee on professional conduct and is without constitutional, legislative or judicial basis.

Clearly, the Committee's investigation, although made in the utmost good faith, could cause irreparable injury to the professional reputations of Petitioners in a manner wholly unauthorized by law.

In view of what we have said, the Temporary Writ of Prohibition entered in this cause on June 28, 1971, is made permanent and the order of June 23, 1971 is hereby quashed and set aside. See *Robinson* v. *Meritt, supra; State ex rel Purcell* v. *Nelson, supra; Monette Road Improvement District* v. *Dudley,* 144 Ark. 169, 222 S.W. 59, for a full discussion of the function of the Writ of Prohibition as it is applied in this case.

HOLT, J., disqualified and not participating. BYRD, J., disqualified and not participating. Special Associate Justice CHARLES A. WALLS, JR., sitting in his stead.